## CHARLESTON.

STATE *v.* GILLILAND.

Submitted January 23, 1902.   Decided March 29, 1902.

1. COURTS' JURISDICTION—*To Require Bond.*
   Courts of record have a discretionary jurisdiction, in case of conviction, for a gross common law misdemeanor, punishment for which has not been prescribed by statute, to require of the defendant sureties for good behavior.  To this extent only, the principles announced in *State* v. *Gould*, 26 W. Va. 258, are overruled.  (p. 280).

2. JURISDICTION—*Common Law—Statutory Misdemeanor*
   Such jurisdiction does not exist when the conviction is for a statutory misdemeanor or a common law misdemeanor for which punishment is prescribed by statute.  (p. 282).

3. SELLING LIQUORS—*Statutory Crime.*
   The simple selling of intoxicating liquors is a statutory offense.  (p. 279).

On rehearing.

*Reversed.*

For former opinion, see 38 S. E. 516.

GILMER & GILMER, for plaintiff in error.

R. H. FREER, Atty. Gen., for the State.

POFFENBARGER, JUDGE:

At the November term, 1899, of the circuit court of Greenbrier County, W. M. Gilliland, upon the trial of an indictment, charging him with having unlawfully sold, offered and exposed for sale, at retail, spirituous liquors, wine, porter, ale, beer, and drinks of a like nature, without a State license therefor, was convicted, and the court, in addition to imposing a fine of fif-

teen dollars and costs, further ordered "that said Gilliland be required to give bond with good security in the penalty of five hundred dollars conditioned to be of good behavior towards all the citizens of this State, and not to sell intoxicating drinks contrary to law for the period of twelve months;" and the defendant was committed to the custody of the sheriff until the bond should be given. The court having overruled his motion to set aside so much of the judgment as required this bond, he excepted and has brought the case here on a writ of error and *supersedeas.*

The indictment charges a statutory offense. The simple selling of intoxicating drinks is not a common law crime or offense. Bishop on Stat. Crimes, s. 984. "An ale-house, if not disorderly, is under the common law lawful, no license being required to keep it." 1 Bishop Crim. Law, s. 505, citing *Rex* v. *Ivyes,* 2 Show. 468. This indictment is under section 1 of chapter 32 of the Code, and the punishment for the offense is prescribed by section 3 of said chapter, and is a fine of not less than ten nor more than one hundred dollars, and, at the discretion of the court, imprisonment in the county jail not exceeding three months. As the selling of intoxicating liquors was not an offense at common law, there is no common law punishment for it. The only punishment, therefore, must be that prescribed by the statute. But, if there had been common law punishment for the selling of liquors, it would be repealed by the statutory provision in reference thereto. "We can always separate the offense from the punishment. So that for example, a statute which provides a new punishment for an old offense repeals by implication only so much of the prior law as concerns the punishment; leaving it permissible to indict an offender either under the old law, whether statutory or common, and inflict on him upon conviction the punishment ordained by the new, or under the new statute, at the election of the prosecuting power." Bishop on Stat. Crimes, s. 166. In addition to this, we have a statute which prohibits the infliction of any other than statutory punishment, when it exists. "A common law offense for which punishment is prescribed by statute shall be punished only in the mode so prescribed." Section 3 of chapter 152 of the Code. Hence, if the selling charged in the indictment were a common law offense it could be punished only under section 3 of chapter 32 of the Code.

However, this is not conclusive of the question, unless it appear that the requisition of sureties is punishment. There was a discretionary jurisdiction at common law in the court trying a person charged with misdemeanor, to bind the accused, after conviction and as a part of the judgment, to good behavior for a time, and that jurisdiction was not statutory. It was a jurisdiction inherent in every court of record, having criminal jurisdiction. In addition to this, there were statutes under which persons not convicted of any offense might be required to enter into recognizances to keep the peace and be of good behavior. They were the same in principle and in substance as the provisions found in chapters 148 and 153 of the Code. "If a person have been convicted of a misdemeanor, it is usually part of the judgment that he shall find security for his good behavior for some time." Bac. Abr. Vol. IX, p. 308. "This requisition of sureties has been several times mentioned before as part of the penalty inflicted upon such as have been guilty of certain gross misdemeanors; but there also it must be understood rather as a caution against the repetition of the offense than any immediate pain or punishment." Blk. Com., Book IV, ch. 18. "Binding to the good behavior was a discretionary judgment at the common law, given by a court of record, for an offense at the suit of the King, after a common law conviction by a verdict of twelve men." Burn's Jus., Vol. IV, p. 268. "I shall observe in general that for crimes of an infamous nature, such as petit larceny, perjury or forgery at common law, gross cheats, conspiracy not requiring a villianous judgment, keeping a bawdy-house, bribing witnesses to stifle their evidence, and offenses of the like nature against the first principles of natural justice and common honesty, it seems to be in great measure left to the prudence of the court to inflict such corporal punishment and also such fine and lien to the good behavior for a certain time, etc. as shall seem most proper and adequate to the offense, from the consideration of the baseness, enormity and dangerous tendency of it: the malice, deliberation, and wilfulness, or the inconsideration, suddenness and surprise with which it was committed; the age, quality, and degree of the offender; and all other circumstances which may any way aggravate or extenuate the guilt." Hawk. P. C., Vol. II, p. 631. It is said by Blk. Com., Book IV, 252, that this jurisdiction falls under the title of preventive justice, and he there discriminates

between preventive justice and punishing justice. But this certainly does not mean that a judgment requiring such recognizance is not punishment. All punishment belongs in some sense to the same title. "And, indeed, if we consider all human punishments in a large and extended view, we shall find them all rather calculated to prevent future crimes, than to expiate the past; since, as was observed in a former chapter, all punishments inflicted by temporal powers may be classed under three heads; such as tend to the amendment of the offender himself, or to deprive him of any power to do future mischief, or to deter others by his example; all of which conduce to one and the same end, of preventing future crimes, whether that be effected by amendment, disability, or example." *Id.* He then proceeds to a discussion of the statutory provisions by which surety for the peace or good behavior is taken when no offense has been committed, and says in those cases, such requisition is not meant as any degree of punishment. From this as well as from his saying the requisition of sureties upon conviction for the misdemeanor is a part of the penalty inflicted, it is to be inferred that in such case the order or judgment requiring the convicted person to enter into bond for good behavior is punishment. The quotations from Hawkins, Bacon and Burns all indicate that it was regarded by the authors of those works as punishment. It would be difficult to class it as anything other than punishment. When the bond is required and not given, the consequence is imprisonment. It is required under pain of imprisonment. How could it be anything else than punishment? Here, the judgment was that the defendant enter into a recognizance for his good behavior for one year and, in default of his doing so, he was committed to the custody of the sheriff. How long he was to remain in custody was in the discretion of the court and it might have been for the whole year. The statute only permits an imprisonment of three months. Hence, the punishment attempted to be inflicted was more severe than the statute itself prescribes.

The existence, nature and extent of this jurisdiction is discussed at great length by JUDGE GREEN in *State* v. *Gould,* 26 W. V. 258, and the conclusion of the Court, as announced by him, is, that the court, in rendering judgment against a defendant in any case upon the conviction of him of any misdemeanor, has no right to add to its judgment as a part thereof

an order requiring the defendant to give a bond with approved security to keep the peace or be of good behavior and in default thereof to be imprisoned, till such bond is given. In that opinion, however, it is admitted that the jurisdiction existed at common law in respect to conviction of common law misdemeanors. But it is pointed out that the taking of such recognizance had never been the practice in this State or in Virginia, and it is argued that as the evidence adduced in the trial of an indictment for misdemeanor is not such as it required in a proceeding for the purpose of requiring sureties for the peace or good behavior, there is no evidence upon which the court can base a judgment requiring such surety. From a careful examination of the authorities cited and others it seems that notwithstanding the want of evidence of threats or bad character on the part of the accused, the English courts did exercise such jurisdiction and require such recognizances. While the Virginia and West Virginia Reports do not disclose any case in which the jurisdiction is recognized, that fact does not preclude its existence. And as it has been shown that it did exist at common law and the common law obtains in this State so far as it has not been repealed and is not repugnant to the laws of this State, it cannot be blotted out by mere argument. But it cannot be exercised as to purely statutory offenses, nor in cases of common law offenses for which punishment is prescribed by statute. Hence, it can only exist as to common law gross misdemeanors for which common law punishment only can be inflicted. As to these cases, the jurisdiction does exist and, to that extent, the principles announced in *Gould's Case* must be overruled. For the reasons herein given, the view taken by the court in *Estes* v. *State,* 2 Humph. (Tenn.) 496, cannot be adopted.

The conclusion, therefore, is that there is error in the judgment and it must be reversed.

*Reversed.*