STATE *ex rel.* LELA YOST, *Admrx., etc.* v. SAM SCOUSZZIO *et al.*

(No. 9492)

Submitted September 21, 1943. Decided October 26, 1943.

*A. Blake Billingslea,* for plaintiff in error.
*Ward Lanham,* for defendants in error.

ROSE, JUDGE:

From a judgment of the Circuit Court of Marion County sustaining a demurrer to the declaration in covenant of State of West Virginia for the use of Lela Yost as administratrix of the personal estate of Ruby Ambrose against Sam Scouszzio and Nick Pralley and dismissing the action, this writ of error was awarded the plaintiff.

On the 17th day of December, 1941, Sam Scouszzio was required to give security for his good behavior and to keep the peace under the provisions of Code, 62-10-1 to 3. The security given was as follows:

> "State of West Virginia, County of Marion, to-wit:
>
> Be it remembered, that on this 17th day of December, 1941, Sam Scouszzio principal, and Nick Pralley, surety, of said County, personally appeared before me, H. Pete Hamilton, a Justice of

said County, and jointly and severally acknowledged themselves to be indebted to the State of West Virginia, in the penal sum of Five Hundred Dollars to be respectively made and levied on their goods, chattels, lands and tenements, and for the use of the State of West Virginia rendered, if the said Sam Scouszzio shall make default in the performances of the condition underwritten.

THE CONDITION OF THE ABOVE RECOGNIZANCE IS SUCH, that if the above bound Sam Scouszzio do and shall keep the peace and be of good behavior toward all the citizens of this State, and especially toward Ruby Ambrose for the term of one year from the date hereof, then this recognizance shall be void, otherwise to remain in full force and virtue.

his mark
Sam Scouszzio (X) (SEAL)
Nick Pralley           (SEAL)

Acknowledged before me and approved as sufficient, this 17th day of December, 1941.

H. Pete Hamilton,
Justice of the Peace."

In February, 1942, Scouszzio shot and killed the said Ruby Ambrose and the present action is by her personal representative to recover the penal sum of this obligation. A demurrer assigning nine grounds was interposed to an amended declaration and was sustained; and, the plaintiff not desiring to amend further, the action was dismissed.

Counsel for the respective parties are not agreed as to the character of the security given. The plaintiff treats, and declares upon it, as a bond. The defendant insists that it is a recognizance and that it must be enforced by procedure applicable to instruments of that character.

The recognizance originated at common law, and is, in form and substance different from a bond.

"A *recognizance* is an obligation, of record which a man enters into before some court of record or magistrate duly authorized, with condition to do some particular act; as to appear at

the assises, to keep the peace, to pay a debt, or the like. It is in most respects like another bond: the difference being chiefly this: that the bond is the creation of a fresh debt or obligation *de novo*, the recognizance is an acknowledgement of a former debt upon record; the form whereof is 'that A. B. doth acknowledge to owe to our lord the king, to the plaintiff, to C. D. or the like, the sum of ten pounds', with condition to be void on performance of the thing stipulated: * * *." II Blackstone, 341.

See also Black's Law Dictionary, 3d Edition, P. 1504; *State* v. *Smith,* 98 W. Va. 621, 127 S. E. 495; *State* v. *Smoot,* 82 W. Va. 63, 95 S. E. 526; *State* v. *Dorr,* 59 W. Va. 188, 53 S. E. 120; *Walker* v. *Commonwealth,* 144 Va. 648, 131 S. E. 230. A recognizance, also, partakes of the character of a conditional judgment. *Republica* v. *Cobbett,* 3 U. S. (Dall.) 467; *State* v. *Morgan,* 136 N. C. 593, 48 S. E. 604.

We are of the opinion that this instrument is a recognizance. A justice is not authorized to take security for good behavior and the keeping of the peace except by recognizance. Code, 62-10-3. This also is the form of security utilized at common law against a breach of the peace. *State* v. *Gilliland,* 51 W. Va. 278, 41 S. E. 131; IV Blackstone, 253. A recognizance need not be formal. Where such a security is required, that which is actually given will whenever possible be construed as such. Code, 62-6-8; *State* v. *Smith, supra; State* v. *Smoot, supra.* Since the justice had no authority to take security in any other form the security taken must be construed as a recognizance or as nothing. Moreover, the instrument in question is in substance a recognizance. It is a certification by a proper officer that the cognizors appeared before him "and jointly and severally acknowledged themselves to be indebted to the State of West Virginia" in a sum certain. This is the essence of a recognizance. *State* v. *Smith, supra; State* v. *Smoot, supra; State* v. *Dorr, supra; Walker* v. *Commonwealth, supra; State* v. *Coletti,* 102 Kan. 523, 170 P. 995. The fact that the persons bound may have af-

fixed their signatures and seals to a recognizance does not transform it into a bond.

Appropriate procedures for the enforcement of bonds and of a recognizance are not identical. At common law, where the king was the cognizee, after forfeiture, the recognizance might be enforced either by action (IV Blackstone, 253), or by scire facias (III Blackstone, 417). These common law rights and remedies under a recognizance, given in a criminal proceeding, survive in the American states, except as modified by statute. Only two statutory provisions, relating to the enforcement of recognizances, are noted by counsel. Code, 62-6-6, provides that:

> "When a person under recognizance in a criminal case, either as a party or witness, fails to perform the condition thereof, if it be to appear before a court, his default shall be recorded therein."

But this provision expressly applies to recognizance "to appear before a court". Code, 56-2-4, provides that:

> "In the case of any bond taken by an officer, or given by a sheriff or constable, and returned to or filed in the office of the clerk of the county court of the county, or any bond or recognizance taken in a criminal case or proceeding, the circuit court of the county, or the court in which any such bond or recognizance is given, may, on motion of any person, or the State, as the case may be, give judgment for so much money as he, or the State, is entitled, by virtue of such bond, to recover by action."

This merely authorized judgment on motion where an action would lie, without stating when such action can be maintained. Code, 6-2-17, provides that:

> "Upon any bond payable to the State of West Virginia, whether heretofore or hereafter taken, suits may be prosecuted from time to time in the name of the State, for the benefit of the State, or of any county, district, corporation or person in-

> jured by a breach of the condition of any such bond, until damages are recovered in the aggregate equal to the penalty thereof."

But this section relates only to bonds, and occurs in the article of the Code relating to bonds of public officers. These are expressly required to be for the "faithful discharge" of official duties and for "accounting for and paying over" moneys officially received. Code, 6-2-3. None of these statutes makes any substantial change in the common law. We, therefore, conclude that the common law right to enforce a recognizance by either action or scire facias exists in this State, although the latter method is the one followed in common practice. It remains to determine whether the personal representative of one murdered by a person under recognizance to be of good behavior and to keep the peace can maintain an action thereon against the cognizors.

The requiring of security to be of good behavior and to keep the peace is more in the nature of criminal, or quasi-criminal, rather than civil, procedure. *Republica* v. *Cobbett, supra; Herz* v. *Hamilton,* 198 Iowa 154, 197 N. W. 53; *Arnold* v. *State,* 92 Ind. 187; *State* v. *Lyon,* 93 N. C. 575; *Levar* v. *State,* 103 Ga. 42, 29 S. E. 467.

At common law the penalty of a breached recognizance in a criminal proceeding was forfeited to the king. IV Blackstone, 253. No statute in this State changes this ancient law. A recognizance to be of good behavior and to keep the peace is wholly preventive, and not remedial. Its purpose is to deter the person required to give the security from misbehavior in general. It does not purport to be for the indemnity of an individual who may be injured by his misconduct. It is to prevent crimes; not torts. It protects the public at large, not any individual especially. It is true that the recognizance here involved contains the words, "toward all the citizens of this State, and especially toward Ruby Ambrose". These phrases are found in this exact form in Mayo's Guide (Flournoy and Brown's Edition, 1892, page 534), and can be traced

back into old English cases. But these words of limitation and special application are not justified by the statute of this State, although we note that the identical statutory provision existed in Virginia at the time of Mayo's writing. The power of a justice to require such security, like all authority of a justice is purely statutory and is found in our Code, 62-10-1, which provides that,

> "Every justice of the peace shall have the power to require, from persons not of good fame, security for their good behavior and to keep the peace, for a term not exceeding one year."

Clearly a justice is not authorized under this statute to limit a recognizance to keep the peace and to be of good behavior to "all the citizens of this State", nor to make it apply "especially toward" the complaining witness or any other person. Therefore we treat these words as pure surplusage.

It is true that criminal proceedings before the justice to obtain security of one to be of good behavior and to keep the peace are instituted upon the complaint of some individual, but this is true of all criminal proceedings before a justice. The proceedings once instituted, however, are prosecuted and concluded, not for the special benefit of the complaining witness, but for the protection of the public as a whole. The security is to be for "good behavior and to keep the peace",—a far broader requirement than the mere protection of the complaining witness. Indeed, the person bound may be guilty of bad behavior and of a breach of the peace which would forfeit the security without committing a tort against any person. The recognizance required is in the nature of a conditional fine, and is designed to deter the offender from the commission of prospective offenses. It in no wise purports to be for the indemnity of any private individual. If we may look to the exact wording of this particular recognizance we find that the cognizors acknowledged themselves "to be indebted to the State of West Vir-

142

ginia * * * for the use of the State of West Virginia rendered" and not for the use of any private individual. But even though the instrument did not contain these words it is legally so limited. A monetary penalty for crime is not enforced for the benefit of the person injured; nor is security for good behavior and the keeping of the peace intended for that purpose. We find no adjudicated case so announcing, but, also, we find no reported case showing that anyone has ever attempted a private recovery on such security.

Another insuperable obstacle to the maintenance of this action is that where one comes to death by the wrongful act of another, the right of his personal representative to maintain an action against the wrongdoer arises from and is limited by statute. Code, 55-7-5. This act provides for the recovery of "damages" only, and only from the tortfeasor, which presupposes an action in tort. The instant action is in covenant.

Accordingly, we are of opinion that the demurrer to the amended declaration was correctly sustained, and the judgment of the trial court will be affirmed.

*Affirmed.*