STATE OF WEST VIRGINIA

*v.*

JOSEPH JEWELL ARRINGTON AND THE

STUYVESANT INSURANCE COMPANY

(No. 12190)

Submitted May 7, 1963.          Decided June 11, 1963.

754

*Harrison Conaway, A. Blake Billingslea,* for appellants.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, for appellee.

CALHOUN, JUDGE:

This case is before the Court on appeal from a final judgment for $15,000 rendered by the Circuit Court of Marion County in a civil action upon a recognizance previously entered into by Joseph Jewell Arrington, as principal, and The Stuyvesant Insurance Company, as surety, in a criminal case then pending before a justice of the peace which involved a felony charge against Arrington.

Code, 62-1-14, authorizes a justice of the peace to take from an accused person a *"recognizance * * * for the appearance of the accused in the circuit, intermediate or criminal court * * *."* (Italics supplied.) The complaint in the civil action makes reference to "the said recognizance and

bond." A copy thereof was made an exhibit with the complaint but it does not appear in the printed record. It is not clear, therefore, whether from a technical standpoint the obligation involved in this case is a bond or recognizance. This Court has previously held that the obligation will be treated as the equivalent of a recognizance in a situation such as this even though it is in the form of a bond. *State v. Smith,* 98 W. Va. 621, pt. 2 syl., 127 S. E. 495; *State v. Smoot,* 82 W. Va. 63, pt. 2 syl., 95 S. E. 526. See also *State v. Scouszzio et al,* 126 W. Va. 135, 27 S. E. 2d 451.

Arrington was arrested at Fairmont on September 6, 1959, upon a warrant charging him with an offense commonly referred to as breaking and entering, a felony. On September 17, 1959, the recognizance referred to above was entered into before the justice of the peace. It was conditioned upon the appearance of Arrington before the Criminal Court of Marion County on the first day of the September, 1959, term thereof and from time to time thereafter in accordance with the provisions of Code, 1931, 62-6-2, as amended. The recognizance was then transmitted to the criminal court.

Arrington was indicted at the September, 1959, term of the criminal court and appeared in person before the court at that term. On his motion the case was continued to the January, 1960, term. He again appeared in person before the court and the case was continued on his motion to the May, 1960, term of court. The case was then set for trial on June 6, 1960, and, upon the failure of Arrington to appear, the prosecuting attorney moved the court to forfeit the bond and thereupon such failure to appear was entered of record in the criminal court. On July 6, 1960, the civil action was instituted by the prosecuting attorney in the Circuit Court of Marion County to recover judgment on the recognizance.

Arrington's home was in Cleveland, Ohio. After his recognizance was executed, he returned to his home. He returned to his home following each of his personal appearances before the Criminal Court of Marion County. On May 5, 1960, he was arrested in Ohio by representatives of the Federal Bureau of Investigation and taken to Camden, Hamilton County, New Jersey, to face a charge of a crime

which was alleged to have been committed in that county and state on May 31, 1956. When first arrested and while in jail in Cleveland, Arrington notified his surety of his arrest and of his consequent predicament. Samuel Wesoky, agent for the surety, testified that he received this information by telephone from Arrington. Wesoky thereupon telephoned the office of the prosecuting attorney of Marion County and talked with an assistant to the prosecuting attorney. As a consequence of this telephone conversation, the prosecuting attorney's office filed a detainer with the proper New Jersey authorities. The detainer was apparently in the form of a letter and a capias issued by the Criminal Court of Marion County which was lodged with the authorities at Camden, New Jersey. The assistant prosecuting attorney testified: "To the best of my knowledge I wrote a letter on May 13 to the Prosecuting Attorney at Camden, New Jersey, requesting that the New Jersey authorities not release Mr. Arrington until the West Virginia authorities had an opportunity to take him into custody with regard to the matter of his trial here in May."

Arrington was tried on the charge pending against him in New Jersey. The trial resulted in an acquittal on September 29, 1960. Arrington waived extradition, consenting thereby to return voluntarily to West Virginia, and on October 3, 1960, officers from Marion County returned Arrington to that county. He remained in the Marion County jail until February 4, 1961, at which time he was released on a bond in the penalty of $5,000, with The Stuyvesant Insurance Company as surety thereon, conditioned for his appearance before the Criminal Court of Marion County at its May, 1961, term. Apparently he returned to his home in Cleveland, Ohio. Subsequently he appeared before the criminal court for trial on the indictment pending therein. His trial resulted in his conviction and on July 17, 1961, he was sentenced to the penitentiary of this state.

The civil case was tried by the Circuit Court of Marion County without a jury. The court heard the testimony of three witnesses, all called in behalf of the defendants: C. Robert Sarver, who was an assistant to the prosecuting at-

torney at the time the detainer was lodged in New Jersey; Samuel Wesoky, agent for the surety; and Joseph Jewell Arrington.

The defendants filed a motion to dismiss the civil action pursuant to R. C. P. 12 (b) on the ground that the circuit court lacked jurisdiction of the subject matter in view of the fact that the recognizance was for the appearance of Arrington in the criminal court. The defendants also moved the court to remit the penalty of the recognizance or some portion thereof pursuant to the provisions of Code, 1931, 62-6-7, a portion of which is as follows: "When, in an action or scire facias on a recognizance, the penalty is adjudged to be forfeited, the court may, on application of a defendant, remit the penalty, or any part of it, and render judgment on such terms and conditions as it deems reasonable." Both defense motions were overruled. The plaintiff moved the court for summary judgment pursuant to R. C. P. 56. In entering judgment for the plaintiff, the circuit court obviously held that the facts established were not sufficient to constitute a defense to the action.

In the circumstances previously outlined, the pertinent facts being without substantial controversy, two basic questions are presented for decision. The first relates to the jurisdiction of the circuit court; and the second involves the sufficiency or insufficiency of the defense as it relates to the merits of the case.

The Criminal Court of Marion County is a court of limited jurisdiction which was created by Acts of the Legislature, 1919, Regular Session, Chapter 69. It is given concurrent jurisdiction with the circuit court of the same county of all felonies and misdemeanors, bastardy proceedings and of *habeas corpus ad subjiciendum*. The act by which the criminal court was created gives to it jurisdiction concurrent with the circuit court "for the collection of all recognizances and bonds taken by the justices of said county * * * in relation to criminal proceedings before said justices * * *." The jurisdiction of the criminal court is almost exclusively criminal in nature. It has no civil jurisdiction except as

noted above and, of course, can exercise no jurisdiction of a civil nature except in the limited situations authorized by statute.

The circuit courts of this state are courts of general jurisdiction created by Article VIII, Section 1 of the Constitution, and by Section 12 of the same article they are specifically given "original and general jurisdiction of all matters of law where the amount in controversy, exclusive of interest, exceeds fifty dollars; * * *." The act which created the Criminal Court of Marion County does not undertake to divest the circuit court of any part of its general jurisdiction and, if it had undertaken to do so, it would have been to that extent unconstitutional. In *State* v. *Scouszzio,* 126 W. Va. 135, 140, 27 S. E. 2d 451, 453, involving an action of covenant, the Court held that "the common law right to enforce a recognizance by either action or scire facias exists in this State, although the latter method is the one followed in common practice." See also *Walker* v. *Commonwealth,* 144 Va. 648, 131 S. E. 230. In the following cases the proceedings were by scire facias: *State* v. *Smith,* 98 W. Va. 621, 127 S. E. 495; *State* v. *Smoot,* 82 W. Va. 63, 95 S. E. 526; *State* v. *Haynes,* 77 W. Va. 190, 87 S. E. 73; *State* v. *Dorr and McElwain,* 59 W. Va. 188, 53 S. E. 120; *State* v. *Boner,* 57 W. Va. 81, 49 S. E. 944; *State* v. *Lambert,* 44 W. Va. 308, 28 S. E. 930. Code, 1931, 56-2-4, provides that, in case of certain bonds and recognizances, including any bond or recognizance taken in a criminal case or proceeding, "the circuit court of the county, or the court in which any such bond or recognizance is given, may, on motion" enter a judgment thereon. It is clear that it was proper to proceed in this case by civil action.

R. C. P. 81 (b) is as follows: "The writ of scire facias is abolished. Relief heretofore available by scire facias may be obtained by appropriate action or motion under the practice prescribed in these rules." It is not necessary for us here to decide whether the criminal court now has any jurisdiction whatsoever by any sort of proceeding to collect or render judgment on a bond or recognizance given in a criminal case. We merely decide that the action on the recog-

nizance in the circuit court was proper and that the circuit court had jurisdiction to entertain the civil action and to render the judgment which it did render in this case.

Turning now to the defense as it relates to the merits of the case, the general rule is that the surety on an appearance bond or recognizance will be relieved from liability only where the failure of the principal to appear was due to an act of God, an act of law, an act of the obligee or an act of a public enemy. 8 C.J.S., Bail, Section 76, pages 207-208; 6 Am. Jur., Bail and Recognizance, Section 172, page 132. Perhaps the general rule has been relieved of some of its harshness and inflexibility by Code, 62-6-7, which gives to the court the discretionary power to remit the penalty or any part of it when the recognizance or bond is adjudged to be forfeited.

If, at the time he is required by his recognizance to appear, the accused is being held in jail in another county of the same state, or in the penitentiary of that state, or if he is being held in prison in another state as a result of extradition from the state in which he is under appearance bond or recognizance, the surety will be relieved of liability for the failure of the accused to appear. In a situation of this character, it is held that the failure of the accused to appear was caused by an act of the state, the obligee of the appearance bond or recognizance. 8 Am. Jur. 2d, Bail and Recognizance, Section 186, page 884; Anno. 4 A.L.R. 2d 440-46; 8 C.J.S., Bail, Section 77, page 208; *State* v. *Liakas,* 165 Neb. 503, 86 N. W. 2d 373. "Where an act of the state in which the criminal charge is pending prevents the appearance of the accused in discharge of the conditions of his bail bond, the sureties on the bond may assert such act in defense against a forfeiture. A reason assigned for this rule is that there is an implied obligation on the part of the obligee not to hinder the bail in the performance of the obligation by any authority within the limits of the jurisdiction, whether state or federal." 8 Am. Jur. 2d, Bail and Recognizance, Section 182, page 882.

It is perhaps a general rule that imprisonment of the accused in another state which results in his failure or inabil-

ity to appear will not excuse his sureties or relieve them from liability. There is, however, some division of authority on that proposition. 6 Am. Jur., Bail and Recognizance, Section 185, page 139; 8 Am. Jur. 2d, Bail and Recognizance, Section 187, page 885; Anno. 4 A.L.R. 2d, Section 4, page 446; 8 C.J.S., Bail, Section 77, page 210. An examination of the decisions cited in support of the general rule will disclose that many of them are based on the fact of the voluntary act of the accused in committing a different offense after the execution of the bond or recognizance; or his voluntary act thereafter of rendering his subsequent arrest and imprisonment possible by his leaving the territorial jurisdiction in which the bond or recognizance was given. 8 Am. Jur. 2d, Bail and Recognizance, Section 187, page 886. In the present case, Arrington was arrested for an offense alleged to have been committed more than three years before his recognizance was given. His arrest by the federal authorities was not rendered possible by his mere act of leaving this state and returning to his home in Ohio. It does not appear, therefore, that his imprisonment in New Jersey resulted from anything he did after the recognizance was given. There is authority for the proposition that sureties will be excused or relieved of liability if the accused subsequently is arrested by federal authorities. 8 C.J.S., Bail, Section 77, page 211; 6 Am. Jur., Bail and Recognizance, Section 188, page 141; Anno. 4 A.L.R. 2d, Section 5, page 449; Bowling v. Commonwealth, 123 Va. 340, 96 S. E. 739; State v. Welborn, 205 N. C. 601, 172 S. E. 174. "The detention of the principal on a bail bond by federal authorities so as to prevent his appearance in a state court is an act of law and excuses the default and is a defense of enforcement of the sureties' liability on the bond, where the federal arrest was for a crime committed prior to the release of the defendant to bail by the state." 8 Am. Jur. 2d, Bail and Recognizance, Section 190, page 888.

It is clear that the principles which impose liability upon sureties in cases of this nature must be applied with a reasonable degree of flexibility and with due consideration of common sense, justice and good faith on the part of both

the principal and the surety. In *State* v. *Johnson,* 69 Wash. 612, 126 P. 56, 57, the court stated: "It is the manifest policy of the statute to encourage the giving of bail in proper cases, rather than to hold in custody at the state's expense persons accused of bailable offenses. The court should so administer cases arising under this statute as to give effect to this manifest policy." See also *State* v. *Jackschitz,* 76 Wash. 253, 136 P. 132, 133; *State* v. *Reed,* 127 Wash. 166, 219 P. 833; *Allison* v. *People,* 132 Colo. 156, 286 P. 2d 1102. "Since there is no reason for penalizing the sureties where it appears that they are unable, through no fault of their own or of the principal, to perform the conditions of the bond, forfeitures of bail bonds will generally be vacated, or other relief therefrom will be granted, where it appears to the satisfaction of the court that uncontrollable circumstances prevented appearance pursuant to the stipulations in the bond, that the default of the principal was excusable, that there was no design to evade justice, and that there was no prejudice to the state resulting from the circumstances involved." 8 Am. Jur. 2d, Bail and Recognizance, Section 177, pages 879-880.

*State* v. *Douglas,* 91 W. Va. 338, 112 S. E. 584, 26 A.L.R. 408, involved a proceeding by scire facias. It appeared in that case that the accused, the principal in the recognizance, was arrested, tried and convicted upon a charge of murder in Oregon after he entered into the recognizance in this state and after the date he was required by his recognizance to appear before the court in this state. The Court emphasized the fact that it did not appear that the accused was outside this state at the time of his initial default. The syllabus points out that, after the time of his default, the accused was arrested, tried and convicted in another state and that "such facts, in the absence of disclosure of any diligence on the part of the sureties to prevent his escape or any effort to discover his whereabouts or recapture him, until long after the date at which his appearance was required, will constitute no defense * * *." That case is clearly distinguishable from the present case and is of quite limited value as a precedent because of the vast difference in its factual background.

From authorities previously referred to, it appears that the surety on a recognizance or appearance bond executed in a criminal case will be relieved of liability where the appearance of the principal is prevented by an act of the state which is the obligee; and this is particularly true where the principal, at the time of his initial default, is being held in custody in relation to an offense alleged to have been committed prior to the time the recognizance was entered into or the bond executed; where the principal has committed no voluntary act after the execution of the recognizance or appearance bond which furnished the immediate cause for his imprisonment on a charge of another offense; and where it is not shown that the surety has been guilty of any dereliction in bringing about the principal's default or any lack of diligence in efforts to procure his ultimate return to the court before which he was required by bond or recognizance to appear.

A detainer has been defined as a writ or instrument, issued or made by a competent officer, authorizing the keeper of a prison to keep in his custody a person therein named. 26A C.J.S., Detainer, page 875; Black's Law Dictionary (4th Ed.). As has been stated previously, the assistant to the prosecuting attorney of Marion County forwarded a capias to the New Jersey authorities with a letter requesting that Arrington be held in custody in that state until officers from this state were sent to return him to Marion County. On May 13, 1960, the assistant prosecuting attorney notified the surety, through Samuel Wesoky, that such arrangements had been made for the detention of Arrington in New Jersey. Wesoky testified that The Stuyvesant Insurance Company was willing to become surety on a bond for the release of Arrington in order that he might return to this state in response to the requirement of the recognizance and that in that connection Wesoky testified that he "contacted our main office in Newark, New Jersey," but that he was advised that Arrington would not be permitted to be released in this manner because of the detainer and that he was advised that "the bond would have to be put up here", (meaning in West Virginia). The willingness of the defendant corporation to become surety again for Arrington is evi-

denced by the fact that it did later become surety for his appearance before the criminal court after his return from New Jersey to Marion County.

Arrington was asked whether a detainer was sent to New Jersey after he was placed in jail in Camden. He replied: "Yes, sir, it was; the Sheriff served me. I immediately applied for bond; they told me * * * I couldn't be released until some disposition was made of it." In another portion of his testimony he stated: "Yes, sir, I tried to post bond, but they would not let me post bond, because of the detainer from this County."

At the time Arrington was required by his recognizance to appear before the Criminal Court of Marion County, he was being held in jail in New Jersey, not merely for that state, but for the State of West Virginia also and in obedience to its request. The rights of West Virginia continued to be recognized and respected by New Jersey authorities after that state ceased to have any other reason to retain him in custody and until Marion County officers returned him to Fairmont. From the testimony, it appears that it was not the New Jersey aspect of Arrington's custody but rather the West Virginia aspect of that custody which was the actual and immediate cause of his default in performing the obligation of his recognizance.

In the circumstances of this case, we believe and accordingly hold that the appearance of Arrington before the Criminal Court of Marion County pursuant to the requirement of the recognizance was effectively prevented by the State of West Virginia and that therefore the circuit court abused its discretion in not remitting the penalty of the recognizance and erred in entering judgment against the defendants for the amount of the penalty thereof. See *Stirling* v. *State,* 85 Fla. 78, 95 So. 300.

For the reasons stated, the judgment of the Circuit Court of Marion County is reversed and the case is remanded to that court with directions to dismiss the civil action.

*Reversed and remanded
with directions.*