# Richmond

JACQUELIN FEDELE v. COMMONWEALTH OF VIRGINIA.

October 12, 1964.

Record No. 5859.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, I'Anson and Carrico, JJ.

*Howard H. Carwile*, for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

I'Anson, J., delivered the opinion of the court.

The defendant, Jacquelin Fedele, was convicted in the Police Court of the City of Richmond on a warrant charging her with being a "person of ill fame, to wit: a night prowler," and on an appeal to the Hustings Court, after a hearing without a jury, the court found her guilty as charged in the warrant and required of her security in the sum of $300 for her good behavior for a period of twelve months, pursuant to § 19.1-20, Code of 1950, as amended, 1960 Repl. Vol. She is here on a writ of error to this judgment.

Defendant contends that the trial court erred in (1) holding that the evidence was sufficient to warrant its action; (2) denying her a jury trial; and (3) not holding that the language in the "peace bond" statutes was so general and vague that they violate both state and federal constitutional guarantees of due process and equal protection of the laws.

The evidence shows that R. H. Carlisle, a police officer of the city of Richmond, while traveling north in a patrol car on Hermitage road on July 15, 1963, between the hours of 1:15 and 1:30 A.M., observed the brake lights of an automobile in an alley. The head-lights on the car were not burning. The alley is in the rear of business property in the 1800 block of Broad street and the entrance to it is located just off Hermitage road, near its intersection with Meadow street. After traveling 20 to 30 yards beyond the alley, the officer turned the patrol car around and returned to the scene. The car was then backing out of the alley into Hermitage road. He followed the car for several blocks before stopping it at an intersection.

When the defendant, who was the driver of the car, was requested by the officer to show her operator's license she replied that she had left it home. Her explanation for the car being stopped in the alley was that she had missed her turn off Meadow street into Broad street and had turned into Hermitage road to get back to Broad; that she was headed in the wrong direction on Hermitage, a one-way street, and drove in the alley to turn around; that she was on her way to visit a friend who lived in the Laburnum avenue section of the city; and that she had lost her way.

When the defendant and her male companion were taken to police headquarters for further questioning it was ascertained that her driver's permit had been revoked, and that her statement as to her destination was misleading. It was also determined that her companion had a criminal record.

The defendant was a married woman with two children, but separated from her husband. She had lived in the city of Richmond for the past six years and was employed as a telephone operator. She did not have a criminal record, and no evidence was presented to show that she had a bad reputation.

Officer Carlisle was permitted to express an opinion that he did not think the defendant turned into the alley to commit an immoral act with her male companion, but that he believed their intention was to break and enter one of the nearby business establishments.

■ Before considering defendant's first assignment of error, we shall direct our attention to the Commonwealth's contention that this Court has no jurisdiction to entertain this appeal and that the proceeding should be dismissed.

The Commonwealth says that this proceeding is governed entirely by the language of Code § 19.1-20, as amended, which does not provide for an appeal from a conservator's judgment; that this Court derives its appellate jurisdiction in criminal cases from § 19.1-282, Code of 1950, as amended, 1960 Repl. Vol., and appeals not criminal from § 8-462, Code of 1950, 1957 Repl. Vol.; that the defendant was not charged with the commission of a crime and no punishment was imposed on her; and that all cases are classified as either criminal or civil but this proceeding is in neither category.

The power of conservators of the peace to require security from persons for their good behavior and to require a recognizance to keep the peace originated in the common law of England and was crystallized in two ancient English statutes. 12 Am. Jur. 2d, Breach of Peace, Etc., § 41, pp. 692, 693; 11 C. J. S., Breach of Peace, § 17, p. 826; Davis, Criminal Law (1838), pp. 379, 384-386; 1 Edw. III, Stat. 2, ch. 16 (1327); 34 Edw. III, ch. 1 (1360).

The entire subject of requiring persons to give security for their good behavior and to keep the peace as a prevention of the commission of future crimes is regulated by statute in Virginia. Title 19.1, Criminal Procedure, Ch. 2, Prevention of Commission of Crimes, §§ 19.1-20 through 19.1-32.1, Code of 1950, as amended, 1960 Repl. Vol.

Code § 19.1-20 gives judicial officers and others power to require of persons "not of good fame" security for their "good behavior" for a term not exceeding one year.

Section 19.1-21 authorizes a conservator of the peace, upon complaint being made under oath and reduced to writing "that there is

good cause to fear that a person intends to commit an offense against the person or property of another * * * to issue a warrant, reciting the complaint, and requiring the person complained of * * * to be * * * brought before him or some other conservator."

Section 19.1-22 deals with trial of an accused by the conservator, who may either discharge him or require of him a recognizance to keep the peace and to be of good behavior. If the accused does not give the required recognizance, the conservator "shall commit him to jail by a warrant, stating the sum and time in and for which the recognizance is directed."

Section 19.1-23 allows the accused to appeal from the conservator's judgment to the appropriate court of the city or county.

Section 19.1-24 confers on the court to which the appeal is taken the power to dismiss or affirm the conservator's judgment. The case is heard *de novo* on such appeal. *Read* v. *Commonwealth*, 24 Gratt. (65 Va.) 618, 620; *Rohanna* v. *Commonwealth*, 168 Va. 696, 700, 190 S. E. 171, 173.

The Commonwealth first argues that a person found guilty of being "not of good fame" and required to give security for good behavior under Code § 19.1-20, has no right of appeal from the judgment of a conservator, because there is no provision in the statute allowing it. We do not agree with this argument.

Code § 19.1-20 confers on a conservator the power to require a person "not of good fame" to give security for his "good behavior" for a term not to exceed one year. This section is implemented by the procedure provided for in § 19.1-21. The length of time for which a recognizance may be required under § 19.1-22 is found in § 19.1-20. Thus it readily appears that these three sections, and the right of appeal allowed under § 19.1-23, all deal with "preventive justice" under chapter 2 of the criminal procedure section of the Code, and are to be read and considered together. *Rohanna* v. *Commonwealth*, *supra* 168 Va. at p. 701, 190 S. E. at p. 173. Hence the right of appeal from the judgment of the justice of the police court, acting as a conservator of the peace, to the Hustings court, is specifically allowed under Code § 19.1-23.

But, says the Commonwealth, even if the appeal to the court below is allowed under Code § 19.1-23, there is no statutory authority conferring jurisdiction on this Court to hear this appeal because the defendant was not charged with a crime, and the requirement to give security for good behavior is not punishment for a past crime but is

for the prevention of a future offense. Thus it is argued that the offense is neither criminal nor civil, and this Court has no statutory authority to entertain this appeal.

A proceeding in which security is required to be given for good behavior and to keep the peace is more in the nature of a criminal, or quasi criminal, rather than civil, procedure. *State* v. *Scouszzio*, 126 W. Va. 135, 27 S. E. 2d 451, 453, 454; 3 Mich. Jur., Breach of the Peace, § 6, pp. 485, 486.

Code § 19.1-282, as amended, provides that a "writ of error shall lie in a criminal case to the judgment of a circuit * * * corporation * * * or hustings court" to this Court.

There is some authority to support the Commonwealth's argument that since the purpose of this proceeding is to prevent a future crime, and not for the punishment of a past offense, it is not a criminal case. The reasoning in the cases supporting this argument is that no substantial harm is done by requiring a recognizance, which will be forfeited only by the commission of a future crime in violation of the recognizance, and since the person is committed to jail only when he fails to give security, no punishment has been imposed for a criminal offense. We cannot agree with this reasoning.

The requirement to give security is in the nature of a conditional fine, and if an accused is unable to provide it he "shall be" committed to jail. Even though the commendable procedure adopted to prevent crime was not intended to be punishment for a past offense, nevertheless the result is punishment for those persons who are unable to give security and must bear the stigma arising from commitment to jail. *State* v. *Scouszzio, supra; State* v. *Gilliland,* 51 W. Va. 278, 41 S. E. 131, 132, 57 L. R. A. 426, 90 Am. St. Rep. 793. The plight of the impecunious defendant who is committed to jail for failure to give the security required of him is apparently not considered in arriving at the conclusion that the requirement to give security is not punishment. For a comprehensive discussion of this subject see 88 U. of Pa. L. Rev. 331, 333-336, and the many cases there cited.

Moreover, the statutes dealing with "preventive justice" are found in the Code of Virginia under the sections entitled "Criminal Procedure." This is a strong indication that it was the intention of the legislature to confer appellate jurisdiction on this Court in this proceeding.

We hold that this proceeding requiring the defendant to give security for her good behavior (which includes "to keep the peace"

and something more, 4 Bl. Comm. 256) is a quasi criminal case, and that this Court has jurisdiction to consider this appeal under the provisions of § 19.1-282. Hence the motion to dismiss the appeal is denied.

The defendant first contends that the evidence was insufficient to find her guilty of being a person of ill fame, to wit: a night prowler.

The phrase "ill fame," as defined in Black's Law Dictionary, 3d ed, at p. 916, means "evil repute; notorious bad character." "Fame" has been held to be synonymous with "reputation." *Harrison* v. *Lakenan*, 189 Mo. 581, 88 S. W. 53, 58. Thus the phrase "ill fame," or "not of good fame," implies bad reputation.

The word "prowl," as defined in Webster's Third New International Dictionary, at p. 1828, means "to move about or wander stealthily * * *; roam in search or as if in search of whatever may be found." A "prowler" is defined as "one who prowls." Thus it may be said that a "night prowler" is one whose habit is to move about at night for the purpose of committing some crime, or disturbing the peace, or doing some wrongful or wicked act.

In Mayo's Guide to Magistrates, 1892, (Flournoy & Brown edition) at p. 532, under Title II, "Surety for Good Behavior," the author said that before a justice should require a party to find sureties for his good behavior under Code § 3912 (now § 19.1-20) "where no actual breach of the peace has been committed or is apprehended, that he should be satisfied by evidence on oath, *not only that the individual is not of good fame or reputation, but that his conduct and actions have been so scandalous as to justify his interference*. If the party is committed for want of sureties, the Justice should take care to show the cause with sufficient certainty." (Emphasis added.) See also Davis, Criminal Law (1838), *supra*, at pp. 384-386; 4 Bl. Comm. 256, *supra*.

We agree with the defendant that the evidence is insufficient to warrant the finding of the court below that she was a person of ill fame, to wit: a night prowler. She had no criminal record, and no evidence was presented that she had a reputation of being a person not of good fame. The arresting officer's testimony negated any idea that she drove the car in the alley for the purpose of committing an immoral act with her male companion. He did state, however, that he suspected the car was parked in the alley for the purpose of breaking and entering a nearby business establishment. Even though

the headlights on the car were not burning and her companion had a criminal record, the evidence does not show that there was good cause to believe that the defendant intended to commit an offense against the property of another. There was no showing of the distance that the car had proceeded into the alley off Hermitage road, a heavily traveled public street, or how long it had been there before the officer saw its brake lights. No burglarious tools were found in the automobile, and nothing was found around or about the nearby properties to indicate any intention to break and enter. Neither the defendant nor her companion was seen out of the automobile, and it was backing out into Hermitage road within a matter of seconds after the officer saw it.

Having reached the conclusion that the evidence was insufficient to support the finding of the trial court, it is unnecessary for us to consider defendant's other assignments of error.

For the reasons stated, the judgment of the court below will be reversed and the case dismissed.

*Reversed and dismissed.*