**Diane Connie ROBERTS, Petitioner,**

v.

**Joseph JANCO, Sheriff of Monongalia County, West Virginia, Respondent.**

**Civ. A. No. C–71–97–E.**

United States District Court,
N. D. West Virginia.

Dec. 22, 1971.

David G. Hanlon, Harrisville, W. Va., for petitioner.

Willard A. Sullivan, Asst. Atty. Gen., Charleston, W. Va., for respondent.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

Petitioner, Diane Connie Roberts, is presently serving a one year sentence in the Monongalia County Jail in Morgantown, West Virginia. This sentence was imposed on February 7, 1971, by a Monongalia County Justice of the Peace under the authority of West Virginia's "Peace Bond" proceedings, West Virginia Code ch. 62, art. 10, §§ 1–4 (Michie 1966).[1]

Having earlier exhausted state remedies, Petitioner now seeks a writ of federal habeas corpus in this Court pursuant to 28 U.S.C. § 2241 et seq. She proceeds here in forma pauperis.

The facts underlying Petitioner's conviction and subsequent incarceration are primarily undisputed. Petitioner was charged under the provisions of § 62–10–2 with assaulting and threatening the life and property of another. At her hearing before the justice of the peace Petitioner admitted her guilt and, "in lieu of bond," according to the justice of the peace, she was committed to the county jail to begin serving a one year sentence as specified in § 62–10–1 ([f]or a term not exceeding one year).

In addition to these agreed-to facts the justice who sentenced Petitioner testified at this Court's evidentiary hearing that he did not give Petitioner any advice regarding counsel.

In contesting Petitioner's conviction and sentence, her attorney attacks the constitutionality of West Virginia's Peace Bond provisions and asserts six grounds[2] in support thereof which con-

---

1. West Virginia Code § 62–10–1, entitled "Security to Keep the Peace" reads:

   Every justice of the peace shall have the power to require, from persons not of good fame, security for their good behavior and to keep the peace, for a term not exceeding one year.

   West Virginia Code § 62–10–2:

   If complaint be made to any justice, that there is good cause to fear that a person intends to commit an offense against the person or property of another, he shall examine the complainant on oath, and any witnesses who may be produced, reduce the complaint to writing, and cause it to be signed by the complainant. If it appear proper, such justice shall issue a warrant, reciting the complaint, and requiring the person complained of forthwith to be apprehended and brought before him or some other justice of the county.

   West Virginia Code § 62–10–3:

   When such person appears, if the justice, on hearing the parties, consider that there is not good cause for the complaint, he shall discharge such person, and may give judgment in his favor and against the complainant for his costs. If he consider there is good cause therefor, he may require a recognizance of the person against whom it is, and give judgment against him for the costs of the prosecution, or any part thereof; and, unless such recognizance be given, he shall commit him to jail, by a warrant, stating the sum, the time for and in which the recognizance is directed. The justice giving judgment under this section for costs may issue a writ of fieri facias thereon, if an appeal be not allowed; and proceedings shall be had thereupon, as provided by section eight [§ 50–18–8], article eighteen, chapter fifty of this Code for the collection of fines and costs in criminal cases by justices. A person from whom such recognizance is required may, on giving it, appeal to the circuit court of the county; and in such case the justice from whose judgment the appeal is taken shall recognize such of the witnesses as he may deem proper.

   West Virginia Code, § 62–10–4:

   The (circuit) court may dismiss the complaint, or affirm the judgment, and make such order as it may deem proper as to the costs. If it award costs against the appellant, the recognizance which he may have given shall stand as surety therefor. When there is a failure to prosecute the appeal, such recognizance shall remain in force, although there be no order of affirmance. On any appeal the court may require of the appellant a new recognizance if it deem proper. Any person committed to jail under this article may be discharged by the circuit court, or the judge thereof in vacation, upon such terms as may be deemed reasonable.

2. Five grounds were presented in the petition:

   "(a) Petitioner's confinement is caused solely by her indigency.

solidate into four basic constitutional issues: cruel and unusual punishment, denial of procedural due process, denial of substantive due process and denial of equal protection.

Counsel for Respondent argues in reply that the West Virginia statutes merely require a "recognizance"[3] and that an accused has only to obligate himself to pay a sum, if and when he fails to keep the peace. Although recognizing the difficulty the State might experience in attempting to collect such a pledge from an indigent under this interpretation, Respondent concludes that this statutory scheme is constitutional since it does not discriminate between rich and poor in its application.

As illustrated by the present case, however, the practice of justices has been, at least on occasions, to require the actual posting of a sum of money, or comparable security, to keep the peace and if the same is not forthcoming, to commit the accused to jail.[4]

■■ As a preface to a discussion of the issues raised by the instant petition, the Court is unpersuaded by the contention raised in oral argument that West Virginia's Peace Bond provisions should be struck down as having lost their original aims and purposes. This Court is of the firm opinion that these statutes continue to serve a salutary purpose and are an effective and proper deterrent to violence, either actually perpetrated or immediately threatened. Consequently, if an accused is afforded the necessary constitutional guarantees under existing procedures, then these statutory provisions must stand and any punishment exacted within the prescribed limits thereof must be upheld and given effect.[5]

When Petitioner's alleged deprivations are considered in a chronological order, the initial issue is whether or not Peti-

---

(b) Petitioner was denied her right to appeal the decision of the Justice solely because of her indigency.

(c) Petitioner has been subject to excessive bail and cruel and unusual punishment.

(d) Petitioner was denied due process in that she was imprisoned under a procedure where proof of guilt beyond a reasonable doubt was not required.

(e) Petitioner was denied due process in that Peace Bond proceedings unconstitutionally shift the burden of proof to the accused."

The sixth ground, denial of right to counsel, was raised during oral argument.

3. For purposes of this opinion, "bond" and "recognizance" will be used interchangeably. Counsel for Respondent, however, both in the pleadings and in oral argument, has differentiated between the two terms:

A *recognizance* is an obligation, of record which a man enters into before some court of record or magistrate duly authorized, with condition to do some particular act; as . . . to keep the peace, to pay a debt, or the like. It is in most respects like another bond: the difference being chiefly this: that the bond is the creation of a fresh debt or obligation *de novo*, the recognizance is an acknowledgment of a former debt upon record. . . .

State ex rel. Yost v. Scouszzion, 126 W.Va. 135, 137–138, 27 S.E.2d 451, 452 (1943).

Thus, Respondent argues that Petitioner in this case should not have been required to post a bond; she simply should have promised to pay a sum if she carried out her threats. To support this interpretation Respondent relies on another statement in *Yost* that "A justice is not authorized to take security for good behavior and the keeping of the peace except by recognizance." (Citing § 62–10–3.) 126 W.Va. at 138, 27 S.E. 2d at 453.

4. The justice before whom Petitioner appeared testified that he has granted individuals similarly charged a release on their own recognizance.

5. For a sentence to constitute cruel and unusual punishment it must be shown that the sentence exceeded the statutory maximum or that the statute is unconstitutional. United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969); Annot., 33 A.L.R. 3d 335, 359 (1970). There is no claim by this Petitioner that her sentence exceeded the statutory maximum.

tioner was entitled to legal representation at her hearing before the justice of the peace.

At the present time the extent to which the Sixth Amendment's right to counsel applies to misdemeanor cases has not been ruled on by either the United States Supreme Court [6] or the West Virginia Supreme Court of Appeals.[7] There is, however, much case law on a misdemeanant's right to counsel. For purposes of this case it is sufficient to note some of the recent federal [8] and state [9] cases which have considered this issue and to recognize the current misdemeanor-felony dichotomy [10] which is interwoven into many of these decisions.

Implicit in the language of § 62–10–1 is the theory that they are intended to deter an individual's future acts. In a realistic sense, however, these provisions also serve to punish.[11] It is evident in this case that as a result of the operation of the involved statutes and/or the practice employed, this Petitioner was assured of punishment exceeding six months imprisonment. Thus, in applying the teachings of Gideon v. Wainwright [12] and its progeny to this case, and in accepting the rationale of those cases which hold that individuals facing possible sentences exceeding six months imprisonment and fines exceeding $500 are entitled to legal

6. Presently pending on the Court's appellate docket is Wooley v. Consolidated City of Jacksonville, 433 F.2d 980 (5th Cir. 1970), in which the Fifth Circuit, in a Per Curiam decision, affirmed the district court's holding that:

[A] defendant in a municipal court, in the absence of waiver, has a right to counsel if the potential penalty in all pending charges could amount to as much as imprisonment for 90 days or a fine of $500.

A writ of certiorari has been granted in State ex rel. Argersinger v. Hamlin, 236 So.2d 442 (Fla.1970), cert. granted, 401 U.S. 908, 91 S.Ct. 887, 27 L.Ed.2d 805 (1971).

7. In its initial opinion in State ex. rel. Moats v. Janco, 8 Crl. 2285, the West Virginia Supreme Court of Appeals held that an individual facing a sentence of 1 to 180 days imprisonment was entitled to the assistance of counsel. On rehearing, however, the decision was modified and no opinion was rendered on this issue. 180 S.E.2d 74 (W.Va. 1971).

8. Alvis v. Kimbrough, 446 F.2d 548 (5th Cir. 1971); James v. Headley, 410 F.2d 325 (5th Cir. 1969); Beck v. Winters, 407 F.2d 125 (8th Cir. 1969), cert. denied, 395 U.S. 963, 89 S.Ct. 2104, 23 L.Ed.2d 749 (1969); Goslin v. Thomas, 400 F.2d 594 (5th Cir. 1968); Marston v. Oliver, 324 F.Supp. 691 (E.D.Va. 1971); Sweeten v. Sneddon, 324 F.Supp. 1094 (D.Utah 1971); Wooley v. Consolidated City of Jacksonville, 308 F. Supp. 1194 (M.D.Fla.1970), aff'd, 433 F.2d 980 (5th Cir. 1970).

9. Rodriquez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971); Newell v. State, 277 A.2d 731 (Me.Sup.Jud.Ct.1971); Hor-

tencio v. Fillis, 25 Utah 2d 73, 475 P.2d 1011 (1970).

10. See cases and commentary cited in Beck v. Winters, 407 F.2d 125, 130 n. 11 (8th Cir. 1969).

11. See State v. Gilliland, 51 W.Va. 278, 41 S.E. 131 (1902), where the West Virginia Supreme Court of Appeals, in commenting on a bond to be of good behavior which had been imposed on the convicted defendant in addition to the statutory penalty, stated:

It would be difficult to class it as anything other than punishment. When the bond is required and not given, the consequence is imprisonment. It is required under pain of imprisonment. How could it be anything else than punishment? Here the judgment was that the defendant enter into a recognizance for his good behavior for one year and, in default of his doing so he was committed to the custody of the sheriff. . . .

51 W.Va. at 281, 41 S.E. at 132.

Also, in State ex rel. Yost v. Scouozzio, 126 W.Va. 135, 27 S.E.2d 451 (1943), it was stated:

The requiring of security to be of good behavior and to keep the peace is more in the nature of criminal, or quasi-criminal, rather than civil, procedure.

126 W.Va. at 140, 27 S.E.2d at 453.

In Fedele v. Commonwealth, 205 Va. 551, 138 S.E.2d 256 (1964), the Virginia Supreme Court of Appeals expressly rejected the State's argument that Virginia's security statutes, having the same source as West Virginia's, were preventive, and not punitive, in nature.

12. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

representation,[13] this Court holds that the absence of an attorney at Petitioner's hearing, or satisfactory evidence of a valid waiver thereof, voids her conviction.

■ In holding that the constitutional right to counsel, either retained or appointed, and the resulting infusion of the principles of advocacy required in a criminal case apply with equal force to West Virginia's Peace Bond proceedings, the Court finds additional support in that portion of Coleman v. Alabama [14] pertaining to a criminal defendant's right to counsel at a preliminary hearing.

In view of the fact that West Virginia's peace warrant proceedings are punitive in nature with confinement of one year assured under the statute and/or the prevailing practice, peace warrant matters in West Virginia are tantamount to a preliminary hearing, a critical stage of criminal proceedings under *Coleman*. Indeed, the statement in *Coleman* that "the guiding hand of counsel . . . is essential to protect the indigent accused against an erroneous or improper prosecution" [15] is applicable to virtually every person, including Petitioner, accused under the so called peace statute.

Although not necessary to grant the relief sought, it appears that a discussion of Petitioner's remaining allegations is warranted.

As presently worded West Virginia Code § 62–10–3 permits a justice of the peace to require a recognizance "[i]f he consider there is *good cause* therefor" but to discharge the accused if he decides "there is not *good cause* for the complaint. . . ." (emphasis added).

Petitioner argues that this statute unconstitutionally shifts the burden of proof to the accused and permits a justice of the peace to require the posting of a peace bond, or be confined to jail, on less than reasonable doubt, the standard required in a criminal case. In support of these arguments, Petitioner relies on Santos v. Nahiwa,[16] a recent case in which the Supreme Court of Hawaii upheld a lower court's determination that Hawaii's "Bond to Keep the Peace," a statute similar to West Virginia's, was unconstitutional in that it failed to require proof of guilt beyond a reasonable doubt.

The present wording of § 62–10–3 also conditions an appeal of the justice's decision on the giving of the recognizance. The effect, therefore, is to deny the right to appeal to an individual who fails or refuses for any reason, including indigency, to post the bond. In the case of an indigent accused, the denial of equal protection found in Tate v. Short [17] is compounded in that the very inability to secure one's freedom also operates to prevent an appeal.

---

13. *See, e. g.,* Newell v. State, 277 A.2d 731 (Me.Sup.Jud.Ct.1971), 9 CrL 2253.
   This distinction is used for federal purposes to differentiate between misdemeanors and petty offenses. 18 U.S.C. § 1. Under the Criminal Justice Act of 1964, as amended, representation by counsel is required for all individuals except petty offenders. 18 U.S.C. § 3006A (a). *But see,* Sweeten v. Sneddon, 324 F.Supp. 1094 (D.Utah 1971), as illustrative of cases in which courts go beyond this federal standard.

14. 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

15. *Id.* at 9, 90 S.Ct. at 2003. This statement has added significance to this case

in view of Respondent's argument that the justice acted improperly in requiring a bond as opposed to a recognizance. See footnote 3, *supra*. In addition, it is alleged in the petition that Petitioner has a history of, and has been treated for, emotional illness. These factors coupled with the justice's statement that he has released others on their own recognizance leads to the inescapable conclusion that the presence of counsel at such a hearing is indispensable to the basic concepts of justice as embodied in the Constitution.

16. 487 P.2d 283 (Hawaii 1971).

17. 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

The Supreme Court's most recent expression on the subject of an indigent's appeal, Mayer v. City of Chicago,[18] strongly suggests that an appeal of a justice's decision under West Virginia's Peace Bond statutes may not be conditioned on the giving of the statutory recognizance. In holding that an indigent misdemeanant has a right to a free transcript or "record of sufficient completeness" for appeal purposes, the Court in *Mayer* stated:

> The size of the defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case. . . .
>
> . . . The invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed.

While not intimating any opinion as to what effect Petitioner's guilty plea[19] would have on these equal protection and due process arguments, the tenor of the *Santos, Tate* and *Mayer* cases makes it clear that the legislature has the opportunity to consider the possibilities of statutory changes in light of these constitutional challenges.[20]

Accordingly, for the reasons and expressions set forth herein, it is ordered that the sentence imposed upon Petitioner is hereby declared void and that the writ of habeas corpus shall issue, directing and authorizing Respondent herein to release and discharge Petitioner from custody.

---

18.  404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971).

19.  Although not raised as an issue in the petition or at the hearing, Petitioner testified that' she was not aware of the consequences of her admission to the justice and that she was not aware of the length of her sentence until one week after the hearing.

20.  While it could be argued that the injection of counsel into these statutory proceedings would cure these alleged deficiencies, it should be noted that the Constitution has been interpreted to require more than the presence of counsel. In the case of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the United States Supreme Court required proof beyond a reasonable doubt in a juvenile delinquency determination, a proceeding which has required the assistance of counsel since In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).