STATE OF HAWAII *v.* ABEL TEXEIRA.

No. 4573.

November 1, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case involves two important questions of criminal procedure and constitutional law: the test to be applied in determining whether an arrest without a warrant was based on probable cause and therefore whether a search incidental to that arrest was reasonable, and whether an officer should be required to reveal the name of an informer on whose information the officer relied in making an arrest without a warrant.

At 4:30 p.m. on March 1, 1965, officer Kim, a member of the narcotics detail of the Honolulu Police Department's Vice Division, received a phone call from an informer who had provided him with accurate information between 20 and 30 times in the past four years. The informer stated that the defendant was driving a light gray foreign station wagon from Kalihi to Palolo Housing, was accompanied by a woman named Linda, and was in possession of marihuana.

Officer Kim immediately informed his superior. After a brief meeting, officer Kim and several other officers proceeded to Palolo Housing. They arrived between 5:00 and 5:15 p.m., and parked across from Linda Fellez's building. The defendant and Linda arrived at 6:45 p.m.

The defendant drove into the parking lot and stopped his car, a light gray 1959 Datsun station wagon, in front of the building next to the one where Linda Fellez lived. The officers arrested the defendant while he was still in the car. One of the officers searched the defendant and found a cigarette in his trousers which later analysis proved to be marihuana. Although there is conflict in the testimony as to whether the marihuana cigarette

was discovered on the defendant's person, he has not alleged that the jury's finding is not supported by substantial evidence.

The narcotics detail had the defendant under observation for four to six months before the arrest but had not obtained any evidence indicating that he was involved in narcotics activities. The defendant had no background of narcotics activities. Two other informers had told other members of the narcotics detail that the defendant was involved in narcotics activities. The officers knew the defendant associated with a woman named Linda Fellez, a known narcotics violator who lived at Palolo Housing.

On the ground that the arrest was not based on probable cause, the defendant moved to suppress the cigarette and to exclude a statement the officers alleged the defendant made to the effect that he smoked marihuana. The defendant also moved to have the name of the informer revealed. The defendant alleged disclosure was necessary to enable him adequately to attack the finding of probable cause both at the hearing on the motion to suppress and at trial. The trial court denied both motions.

## I. *Probable Cause*

The Fourth Amendment to the Constitution of the United States protects a citizen against unreasonable searches and seizures by federal officers. That protection is applicable, through the Fourteenth Amendment, to action by state officers. It is enforced by the rule requiring exclusion of any evidence obtained as a result of an unreasonable search and seizure, *Mapp* v. *Ohio,* 367 U.S. 643 (1961). For purposes of the Fourteenth Amendment the reasonableness of a search and seizure by state officers is determined by the same test applied to searches and seizures by federal officers, *Ker* v. *California,* 374 U.S. 23 (1963).

Under the federal standard, applicable to the states, a search is reasonable only if it is made pursuant to a valid search warrant, or if it is with the consent of the person searched, or if it is incidental to a lawful arrest, *United States* v. *Rabinowitz,* 339 U.S. 56 (1950). Where the search is incidental to an arrest, the search cannot be sustained unless the arrest is based on probable

cause as defined by the federal decisions, *Ker* v. *California, supra* at 34-35.

Under federal law, hearsay evidence is sufficient to support an arrest, with or without a warrant, as long as there is a substantial basis for crediting the hearsay, *Jones* v. *United States,* 362 U.S. 257, 269 (1960). Past reliability or verification of many of the details of the tip appear to be sufficient to justify reliance on the informer, *Jones* v. *United States,* 326 F.2d 124, 128-29 (9th Cir. 1963), *cert. denied,* 377 U.S. 956 (1964).

The facts in the case before us are virtually identical with the facts in *Draper* v. *United States,* 358 U.S. 307 (1959) and we find that case controlling. In *Draper,* an informer, labeled by the court a "special employee,"[1] who had provided accurate information in the past, told a federal narcotics agent that the defendant had gone to Chicago to buy narcotics and would return by train within two days. The informer described the defendant, including the clothing he would be wearing. He stated that the defendant would be carrying a tan zipper bag and would be walking rapidly. The narcotics agent waited at the train station, and on the second day, the defendant arrived by train from Chicago. The informer's description of the defendant was accurate. The agent arrested the defendant and searched him. The search produced two packages of heroin which the prosecution was permitted to introduce into evidence over the defendant's objection. The Supreme Court held that the officer had knowledge of sufficient facts to justify the arrest. The Court held that verification of every detail of the informer's statement except the possession of narcotics provided the officer with probable cause to believe the defendant was committing a crime, 358 U.S. at 313. The arrest was lawful and therefore the search and seizure were lawful, 358 U.S. at 314.

In this case, there was both verification of every fact the informer communicated to officer Kim, and a history of past reliability. The details of the description are no less specific. In

---

[1]Apparently, the federal officers paid the informer. There is no indication that the "special employee" was a federal officer. Subsequent cases have disregarded this label in relying on *Draper* as precedent.

fact in the present case, the evidence appears stronger. The defendant was accompanied by a known narcotics violator and the defendant had been under surveillance for several months. As in this case, there was no indication in *Draper* that the defendant had a background of narcotics convictions. The officers' failure to observe incriminating activity during the period when they had the defendant under surveillance is a relevant, but by no means determining, factor for the trial court to consider in deciding whether the officers had probable cause to make the arrest. Under the federal standard, the officers had probable cause to arrest the defendant. The search was performed incidental to a lawful arrest. Therefore, the trial court properly denied the motion to suppress the cigarette insofar as it was based on the Federal Constitution.

The federal decisions do not, however, prevent this court from extending greater protection in interpreting the state constitution where we determine it to be appropriate.[2] In this case, however, we do not find it desirable to enlarge upon the protection afforded by the Federal Constitution.

Officers have probable cause to make an arrest when

> the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed], *Carroll* v. *United States*, 267 U.S. 132, 162 (1925).

It is clear "that the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify con-

---

[2] Notwithstanding statements in the committee reports and debates preceding adoption of the state constitution, *e.g.*, *Proceedings of the Constitutional Convention*, vol. 1 at 301, vol. 2 at 28-29, the Hawaii Supreme Court, as the highest court of a sovereign state, is under the obligation to construe the state constitution, not in total disregard of federal interpretations of identical language, but with reference to the wisdom of adopting those interpretations for our state. As long as we afford defendants the minimum protection required by federal interpretations of the Fourteenth Amendment to the Federal Constitution, we are unrestricted in interpreting the constitution of this state to afford greater protection. Whatever confusion may have been generated by this court's brief discussions of this problem in *State* v. *Kitashiro*, 48 Haw. 204, 397 P.2d 558 (1964), and in *State* v. *Pokini*, 45 Haw. 295, 367 P.2d 499 (1961), should hereby be dispelled.

demnation," *Locke* v. *United States,* 11 U.S. (7 Cranch) 339, 348 (1813), *accord, Jones* v. *United States,* 362 U.S. 257, 270 (1960). The Supreme Court succinctly summarized the difficulty we face in determining when an officer has probable cause to make an arrest.

> The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of officers' whim or caprice. *Brinegar* v. *United States,* 338 U.S. 160, 176 (1949).

The Supreme Court has observed, and we think with unfortunate accuracy, that the informer system is a necessary weapon to combat crime and may well be a reliable basis for obtaining important information, *Lewis* v. *United States,* 385 U.S. 206, 209-10 (1966). What facts constitute reasonably trustworthy information must be determined in each case.

We could establish some greater showing of reliability, short of disclosure, perhaps by requiring the officer to reveal the basis of the informer's knowledge. In most instances the informer provides information of which he has personal knowledge. Therefore, to reveal the manner in which the informer obtained his information may, in many cases, be equivalent to revealing his identity. Divulgence of an informer's identity is not invariably mandated by the Constitution of the United States, *McCray* v. *Illinois,* 386 U.S. 300 (1967), *Roviaro* v. *United States,* 353 U.S. 53 (1957), *see also infra* Part II. Requiring such an additional showing of reliability would not significantly facilitate a defendant's cross-examination of the officer in attempting to disprove the existence of probable cause for the arrest. The test is whether the *officer,* acting as reasonable man, had probable cause, whether he reasonably relied on the hearsay. Reasonable reliance is established by showing past reliability of the informer and verification of the particulars of the information before making the arrest, regardless of the source of the informer's information. Whatever added protection might be obtained by requiring a

stricter standard of proof at a preliminary stage would pale in light of the impairment of criminal investigation.

In deciding not to require a greater showing than the United States Supreme Court requires, we are not unmindful of Justice Douglas' repeated warning of the dangers of permitting arrests on the basis of informer tips, *United States* v. *Ventresca*, 380 U.S. 102, 116-23 (1965) (dissenting opinion); *Rugendorf* v. *United States*, 376 U.S. 528, 537-42 (1964) (dissenting opinion); *Draper* v. *United States*, 358 U.S. 307, 314-25 (1959) (dissenting opinion). We are aware of his caution that

> This is an age where faceless informers have been reintroduced into our society in alarming ways. Sometimes their anonymity is defended on the ground that revelation of their names would ruin counter-espionage or cripple an underground network of agents. Yet I think in these Fourth Amendment cases the duty of the magistrate is nondelegable. It is not sufficient that the police think there is cause for an invasion of the privacy of the home. The judicial officer must also be convinced; and to him the police must go except for emergency situations. The magistrate should know the evidence on which the police propose to act. Unless that is the requirement, unless the magistrate makes his independent judgment on all the known facts, then he tends to become merely the tool of police interests. Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects. *Jones* v. *United States*, 362 U.S. at 273 (dissenting opinion) .

We agree that it is preferable for the police to act pursuant to a judicially issued warrant wherever possible. We think, however, that Justice Douglas underestimates the number of situations in which obtaining warrants may be impractical. Virtually every case raising the question of arrest without a warrant involves a "possession" crime where prompt action is crucial. In the instant case, the crime is possession of narcotics. Where the police reasonably believe that the defendant is in possession illegally of some object, the time it would take to obtain a search or arrest warrant could well be sufficient for the defendant to destroy or

otherwise rid himself of the contraband. We therefore apply the federal decisions as they stand today as the law under the Constitution of the State of Hawaii. The arrest, search and seizure did not violate the state constitution. Consequently, the trial court properly denied the defendant's motion to suppress the cigarette and to exclude the statement.

## II. *Disclosure of the Informer's Identity*

On the second issue, whether the informer's identity should be revealed to permit the defendant to challenge the officer's testimony to establish absence of probable cause, the Supreme Court of the United States has resolved the question against mandatory disclosure. In *McCray* v. *Illinois*, 386 U.S. 300 (1967), the Court clarified its ruling in *Roviaro* v. *United States*, 353 U.S. 53 (1957). In *Roviaro*, the Court refused to establish an absolute rule requiring disclosure of the informer's identity.

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. 353 U.S. at 62.

Subsequent cases interpreted *Roviaro* to require disclosure where the informer was a participant in the crime or where he was a material witness, *Miller* v. *United States*, 273 F.2d 279 (5th Cir.), *cert. denied*, 362 U.S. 928 (1959), *State* v. *Penney*, 242 Ore. 470, 410 P.2d 226 (1966). Courts divided on the issue of whether disclosure should be required to permit the defendant to attack the officer's testimony at a motion to suppress evidence obtained as a result of a search incidental to an arrest without a warrant, *compare State* v. *Burnett*, 42 N.J. 377, 201 A.2d 39 (1964) *with Priestly* v. *Superior Court*, 50 Cal. 2d 812, 330 P.2d 39 (1958).

In *McCray*, the Supreme Court reviewed the numerous post-

*Roviaro* decisions and concluded that the Constitution did not dictate disclosure where the sole purpose was to challenge the finding of probable cause. In its discretion, the trial court may require disclosure where it believes that the officer's testimony is inaccurate or untruthful.

We recognize that *McCray* was a 5-4 decision and that one of the members of the majority has left the Court. We do not feel we are free, however, to speculate that if the issue were now presented the Supreme Court would reverse itself and hold disclosure constitutionally mandated.

As with the first issue decided today, this court is free to pass beyond the bounds of protection provided by the Federal Constitution in interpreting the state constitution. Again, careful examination of the problem leads us to conclude that the federal resolution is the proper resolution of a concededly difficult question.

We proceed from the assumption that informers are a necessary part of the police enforcement arsenal, *Lewis* v. *United States*, 385 U.S. at 208-09, *Roviaro* v. *United States*, 353 U.S. at 59. The informer privilege is well established and is based on the need to protect those who provide information to the police. Before this privilege will be limited, the defendant must establish that his right to a fair trial or otherwise to assert his constitutional rights has been prejudiced.

The defendant here asserts that he is deprived of the right to challenge adequately the officer's testimony as to the existence of the informer and the information he communicated. He argues that this prevents him from disproving that the officer had probable cause to make the arrest and that his right to be protected from unreasonable searches and seizures was violated. We recognize that examining the informer might permit defense counsel to impeach the officer's testimony, and in some cases might even permit counsel to establish that the officer completely fabricated the entire story about an informer providing the information. There are several answers to this argument. First, it is grounded on the assumption that officers will commit perjury. In some cases, well-intentioned law enforcement officers may be

overly zealous in attempting to protect the public against criminals and perhaps an officer occasionally may consciously perjure himself. Doubtless this is a factor which the judge ought to consider in deciding whether he believes the officer's testimony and whether in his discretion he should require disclosure of the informer's identity, *State* v. *Burnett, supra* at 389, 201 A.2d at 46.

Second, the argument fails to appreciate the precise nature of the question to be resolved at the hearing on a motion to suppress. The question is whether *the officer* had probable cause to make the arrest, whether the information he had would have justified a reasonable man in concluding that the defendant was committing a crime. The inquiry relates to the *reasonableness of the officer's reliance on the informer*. This may be established by the officer's testimony of previous reliability and verification of the tip before making the arrest. The officer is subject to cross-examination on those points. Defense counsel may question the officer on details of the past tips, and verify whether such cases were brought to trial. We believe that the defendant is fully able to challenge the officer's testimony without the informer's presence. We do not believe, as a few courts apparently do, that denying the disclosure will make the officer the final judge of whether probable cause existed, *Priestly* v. *Superior Court, supra* at 818, 330 P.2d at 43. The judge has the power to require disclosure if he believes it necessary, as where the defendant has thrown some doubt on the officer's credibility, just as he would in examining an officer on an application for a warrant.

We recognize that it would be desirable for the police to investigate each case thoroughly before making an arrest and obtain completely independent evidence. But we must not forget that evidence to prove guilt beyond a reasonable doubt is not required to make an arrest. Furthermore, the police have neither the resources nor the time to conduct a thorough pre-arrest investigation as though preparing for a criminal trial. The law in the area of probable cause for arrest must be resolved by practical analysis. We realize that arrests should be made pursuant to warrants, but we also recognize that the police often are required to act immediately. Therefore, as long as the defendant is

protected by a judicial determination of probable cause, his rights are vindicated.[3]

The defendant failed to indicate any basis on which the trial court should have doubted officer Kim's credibility. The trial court's refusal to require the disclosure of the informer's identity was a proper exercise of discretion and did not violate either the federal or the state constitution.

Affirmed.

*Ambrose J. Rosehill* for defendant-appellant.

*Barclay Bryan,* Deputy Prosecuting Attorney, City and County of Honolulu *(John H. Peters,* Prosecuting Attorney, with him on the brief) , for the State, plaintiff-appellee.

---

DISSENTING OPINION OF MIZUHA, J., WITH
WHOM ABE, J., JOINS.

Although the opinion of the court recognizes that disclosure of information may be constitutionally mandated in federal decisions in the future, it still clings to the myth that it is needed "to protect those who provide information to the police."

Defendant who was arrested without a warrant, contends that there was no reasonable ground for his arrest. "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." *Beck* v. *Ohio,* 379 U.S. 89, 96.

The state claims the police had "probable cause" established by a policeman's testimony that he received a tip from an unnamed and unidentified informer. The determination of the legality of defendant's arrest turns upon the existence and the reliability of the informer.

---

[3]We should note that an arrest warrant is obtained in an ex parte proceeding whereas here there was an adversary proceeding at which the defendant had the opportunity to cross-examine the witnesses supporting the arrest.

As stated by Mr. Justice Schaefer dissenting in *People* v. *Durr*, 28 Ill. 2d 308, 318, 192 N.E.2d 379, 384, unless the identity of the informer is disclosed, "the policeman himself conclusively determines the validity of his own arrest."

Mr. Justice Traynor condemned the practice in *Priestly* v. *Superior Court*, 50 Cal.2d 812, 818, 330 P.2d 39, 43:

> "If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue."

The Constitution of the State of Hawaii clearly prohibits unreasonable search and seizure. Our courts are charged with the responsibility of enforcing limitations upon arrest and upon the use of illegally seized evidence.

There is no justification for deference to Federal decisions when the liberty of the individual is at stake. To conclude in this case that the "federal resolution is the proper resolution" is to let the "whole process of arrest revert once more to whispered accusations by people. When we lower the guards as we do today, we risk making the role of the informer—odious in our history— once more supreme." *Draper* v. *United States*, 358 U.S. 307, 324 (Dissenting Opinion of Douglas, J.). We cannot await another generation before the United States Supreme Court decides that a criminal defendant should be accorded the right to cross-examine as to the source of the policeman's information.

I would, therefore, reverse the judgment and remand the case for a new trial.