303 So.2d 133

### Ex parte Eugene Howard JAMES.

2 Div. 133.

Court of Criminal Appeals of Alabama.

May 8, 1974.

Rehearing Denied June 25, 1974.

No brief for respondent.

Drake, Knowles & Still, University, for petitioner.

HARRIS, Judge.

This is an original petition for a writ of habeas corpus.

The case started with an affidavit and warrant of arrest issued out of the County Court of Bibb County which reads as follows:

"COUNTY COURT AFFIDAVIT AND WARRANT OF ARREST

"STATE OF ALABAMA
BIBB COUNTY.

IN THE COUNTY COURT
OF
BIBB COUNTY, ALABAMA.

"No. 6753 January 15 Session 1974

"Before me, Fred H. Davis, Judge of Probate of Bibb County, Alabama and Ex-Officio Judge of The County Court, personally appeared Morris Moody, who, being by me first duly sworn, deposes and says that Eugene Howard James has threatened to kill Morris Moody in the presence of a police officer, and has committed assault and battery on Morris Moody on two different occasions by grabbing him around the throat and by striking him across the throat with a comb or other instrument.

"/s/ Morris Moody

"Sworn to and subscribed before me this the 15 day of Jan. 1974.

"/s/ Fred H. Davis
Judge of Probate of Bibb County, Alabama—
Ex-Officio Judge of the County Court

---

"COUNTY COURT WARRANT OF ARREST

"THE STATE OF ALABAMA,
Bibb County        No. _____ January 15 Session 1974

"TO ANY LAWFUL OFFICER OF THE STATE, GREETINGS:

"Complaint on oath having been made before me that the Eugene Howard James has threatened the life of affiant in the presence of a police officer and has committed assault and battery on affiant on two occasions, you are hereby commanded forthwith to arrest the said Eugene Howard James and bring him before me, the said Fred H. Davis, Judge of Probate and Ex-Officio Judge of the County Court of Bibb County, Alabama.

"Dated the 15th day of January, 1974.

"/s/ Fred H. Davis
Judge of Probate of Bibb County, Alabama—
Ex-Officio Judge of the County Court of
Bibb County, Alabama

"Filed In Office This 16th Day of Jan 1974.

"/s/ R. L. Foster, Clerk of Circuit Court."

Following a plenary hearing before the judge of the County Court of Bibb County, the judge rendered the following order and decree:

"STATE'S EXHIBIT ONE

"STATE OF ALABAMA
        VS
EUGENE HOWARD JAMES
            DEFENDANT

"IN THE COUNTY COURT OF BIBB COUNTY, ALABAMA

PROCEEDINGS TO KEEP THE PEACE

"This cause coming on to be heard this date upon sworn testimony given in open court before the Court, the Court is of the opinion that there

is just reason to fear the commission of the offense as alleged in the affidavit and warrant of arrest hereto filed in this cause, and that the Defendant must be required to give security to keep the peace.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT:

"(1) That the Defendant be and he is hereby required to give bond and/or security to keep the peace with good and sufficient sureties in the amount of $20,000.00 in the form provided in Title 15, Section 409, Code of Alabama, recompiled 1958, to all the people of the State of Alabama and particularly towards Morris B. Moody, the person against whom there is reason to fear the threatened offense may be committed for a period of twelve months from this date.

"(2) Pending the posting of the bond and/or security to keep the peace as hereinabove set forth, the Defendant shall be committed to the Bibb County Jail, Centreville, Alabama.

"Done this the 29th day of January, 1974.

"/s/  Fred H. Davis
Judge of Probate and Ex Officio Judge of the
County Court of Bibb County, Alabama

"Filed In Office This 29th Day of January 1974

/s/  R. L. Foster Clerk of Circuit Court."

Following the above order and decree, petitioner fied his petition for writ of habeas corpus in the Circuit Court of Bibb County before Honorable Virgis M. Ashworth, Circuit Judge, contending, among other things, that his incarceration in the Bibb County jail is illegal and unconstitutional under the Constitution and laws of the State of Alabama and the United States.

He made a broad, sweeping and devastating attack on the constitutionality of Alabama's "peace bond" proceedings, on its face, and as applied to him, alleging:

"A.  It allows a person to be criminally punished without proof of commission of a crime, in violation of the due process clauses of the Fourteenth Amendment to the Constitution of the United States and Article 1, § 6 of the Constitution of Alabama.

"B.  It allows a person to be criminally punished for violation of the provisions of law which do not adequately inform the person of what is prohibited and is thus in violation of the due process clauses of the Fourteenth Amendment to the Constitution of the United States and Article 1, § 6 of the Constitution of Alabama.

"C.  It allows a person to be criminally punished after a proceeding in which he must prove his innocence to the satisfaction of the Court rather than the State having the burden of proving its case beyond a reasonable doubt and is thus in violation of the due process clauses of the Fourteenth Amendment to the United States Constitution and Article 1, § 6 of the Constitution of Alabama.

"D.  It allows a person to be punished twice for the same action, in violation of the double jeopardy provisions of the Fifth Amendment to

the United States Constitution and Article 1, § 9 of the Constitution of Alabama.

"E. It allows a person to be criminally punished for the inability to post a bond in violation of due process of law and equal protection under the Fourteenth Amendment to the United States Constitution.

"F. It is so vague and overbroad as to violate due process under the Fourteenth Amendment to the United States Constitution.

"G. It denies a right of appeal and jury trial unless a person is sufficiently wealthy to post a bond in violation of due process and equal protection clauses of the Fourteenth Amendment and Article I, Section 13 of the Alabama Constitution.

"H. It provides for a punishment so unrelated to the acts charged that it not only denies due process but also violates the cruel and unusual punishment provisions of the Eighth Amendment to the United States Constitution and Article I, § 15 of the Constitution of Alabama."

At the hearing before Judge Ashworth, the following stipulation was entered of record:

"MR. FAILE: Now, it is further agreed and stipulated to by the parties, the State of Alabama and Counsel for the Defendant, Mr. Ralph Knowles, that the testimony given in open court before the Honorable Fred H. Davis and was taken down by the Court Reporter of the Fourth Judicial Circuit, be submitted—be transcribed and submitted to this Court for final determination of the habeas corpus petition that has been filed.

"THE COURT: And when said transcript is completed and filed in the Circuit Court of Bibb County, Alabama, the evidence contained therein shall be the evidence presented to the Circuit Court of Bibb County, Alabama, on the Defendant's Petition for a Writ of Habeas Corpus.

"MR. KNOWLES: That is correct, of course, as always, we are not stipulating as to the truth of the testimony, but that that would be the testimony, presumably.

"THE COURT: And it will be upon that evidence that the Court will render its decision.

"MR. KNOWLES: That is correct, upon that evidence and upon the legal proceedings in this case, yes, sir.

"THE COURT: That is right.

"MR. FAILE: I think that covers it.

"THE COURT: I think that does, also."

At the conclusion of the hearing, Judge Ashworth entered the following order:

"This cause coming on to be heard on the Petition of Eugene Howard James for a Writ of Habeas Corpus for the discharge and release of Eugene Howard James. Eugene Howard James and his attorney, Hon. Ralph Knowles, being present in Court and Jack Lee, Sheriff of Bibb County, Alabama, and William Faile, Bob Morrow and George White, District Attorneys for the State of Alabama, Bibb County, being present

in Court, and both Eugene Howard James and the State of Alabama appeared before the Court and made certain stipulations as set out on page four and page six of the transcript of the Official Court Reporter of this Court in the evidence of the original hearing in the Magistrate's Court as taken and transcribed by the Official Court Reporter and the Court having considered all matters of record pertaining to this proceeding:

"(1) The Court finds that the only question that the Circuit Court of Bibb County, Alabama, has jurisdiction of are those grounds set out in Eugene Howard James' Petition for a Writ of Habeas Corpus which says that the incarceration of Eugene Howard James is unconstitutional and that Title 15, § 401 et seq. Code of Alabama are unconstitutional and in violation of both the Constitution of The United States and of the State of Alabama.

"(2) The Court finds that those grounds which deal with the facts which were before the Hon. Fred H. Davis, ex•officio judge of the County Court of Bibb County, Alabama and his decision setting the bond of Twenty Thousand ($20,000) Dollars is not within the jurisdiction of the Circuit Court of Bibb County, Alabama, on a Petition for Writ of Habeas Corpus. The Supreme Court of Alabama held in the case of Cox versus State, 157 Alabama 1, 47 So. 1025, that the only mode of revising the decision of the justice upon the facts is by appeal and not on Writ of Habeas Corpus. The Supreme Court of Alabama also held in Ex Parte Colburn [Coburn], 38 Alabama 237, that the only mode of revising the decision of the justice upon the facts of a peace proceeding is by appeal and not by Writ of Habeas Corpus.

"The Court having considered the grounds for Writ of Habeas Corpus upon the constitutionality of Title 15 § 401 et seq. Code of Alabama, as set out are constitutional under the police powers of the State.to keep the peace among its citizens and that said sections do not deny said Eugene Howard James any of his constitutional rights under either the United States Constitution or the Constitution of the State of Alabama.

"The Court is of the opinion that it doesn't have jurisdiction of Eugene Howard James' Petition for Writ of Habeas Corpus of the facts presented to Hon. Fred H. Davis, ex officio judge of Bibb County, Alabama, and his decision based upon these facts.

"It is therefore ORDERED, ADJUDGED, AND DECREED by the Court that Eugene Howard James is not held in custody by Jack Lee, Sheriff of Bibb County, Alabama, illegally or unconstitutionally. The said Jack Lee, Sheriff of Bibb County, Alabama, shall take, receive, keep and hold said Eugene Howard James in custody and detain him in jail of said County until he is legally discharged in accordance with the law of the State of Alabama made and provided in such cases.

"Done this 13th day of March 1974.

"/s/   Virgis M. Ashworth
CIRCUIT JUDGE
FOURTH JUDICIAL CIRCUIT
STATE OF ALABAMA

"Filed in Office this 13th day of Mar., 1974

R. L. Foster
Clerk of Circuit Court
Bibb County, Alabama."

The two cases cited by Judge Ashworth, viz., Cox v. State, 157 Ala. 1, 47 So. 1025, and Ex Parte Coburn, 38 Ala. 237, hold that the only mode of revising the decision of the justice (magistrate) upon the facts is by appeal. There was no appeal from the County Court in this case, but there was a *stipulation by both parties that the evidence at the hearing in the County Court would be the evidence upon which Judge Ashworth would render his decision in this case.* The transcript of the testimony before the County Court was taken and transcribed by the official court reporter of the Fourth Judicial Circuit, was properly certified, and was filed in the court below as Exhibit 1 to these proceedings. We cannot ignore this testimony.

The complaining party who made the affidavit leading to the arrest warrant was the principal of West Blocton High School in Bibb County and had been for about nine years. Petitioner is a black man, age 26, who, prior to his arrest was living in West Blocton with his wife and two small children. He was not and had never been a student at the West Blocton High School.

The first contact the complainant had with petitioner was in February, 1973, during a basketball game between West Blocton High School and another school. His attention was attracted to an argument between petitioner and a security guard at the school. He heard petitioner say, "—— ——, you have got that gun on your side but you won't use it." The complainant asked him to leave and petitioner said, "Well, give me my money back and I will leave." Complainant offered him the money and petitioner slapped his hand out of the way and told him he was going back in there and see the rest of the game. He was told he had to leave as he had caused a disturbance. He refused and said, "You put me out." Complainant walked in his office to call the police and while holding the receiver in one hand and looking up the number in the telephone directory, petitioner walked in the office and struck complainant in the face with his fist. Complainant then struck petitioner several times and the last blow caused him to fall against the concrete facing of a door causing a laceration to his forehead. Complainant picked petitioner from the floor and carried him in a bathroom to wash the blood from his face. One of the coaches at the school came in to assist and after the bleeding was controlled, the coach left. Petitioner then told complainant that they were the only two in there then and that he was going to get him. Complainant asked him if he had a knife and he said yes. He was invited to pull it and petitioner drew a metal afro comb and struck complainant across his throat with this comb and started choking him with both hands on his neck. Complainant finally subdued him just about the time a deputy sheriff arrived at the school. As petitioner was leaving the deputy heard him say to the complainant, "I am going to get you and I am going to get you one way or the other." Complainant did not issue a warrant for assault and battery against petitioner on this occasion.

The next encounter between complainant and petitioner took place at another basketball game a year later. In January, 1974, West Blocton High had just completed a game with Gordo High School when a disturbance broke out in the gym. The Gordo coach and some of the players came to complainant to solicit his aid in helping them board a school bus and he went to their rescue. After dispersing the crowd complainant became aware of the presence of petitioner. Petitioner walked close to the complainant and rubbed up against him and then accused the complainant of rubbing up against him saying, "Hey, man, you been rubbing up against me." The complainant replied, "Fellow, nobody has touched you." Petitioner said, "Yeah, man, you have been rubbing up against me," and the complainant said, "Just get on out of here. I don't want any trouble with you." Petitioner then stripped off his jacket and grabbed him around the throat and complainant stepped

away from him and went to help get the Gordo players out of the dressing room. In the meantime, the Chief of Police arrived and told complainant, "that fellow is back over here," referring to petitioner. Petitioner came to the hallway leading to the office and told complainant that he wanted to talk to him by himself. The complainant told him if he had any statement to make he could make it to him in front of the officer. In the course of the next few minutes petitioner made the following statements to complainant in the presence of the officer:

"I want to know why you pushed me; Man, do you think I am crazy or something; You hate me because I am a nigger; You put this scar on my head; Naw, you did that because I was talking to some white girls; I am going to kill you, I swear I am going to kill you; Yes, I will tell you in front of that policeman standing there I am going to kill you; I am going to watch you so close that you will think I am sleeping in your bed."

At this point the Chief of Poice intervened and told petitioner to leave and as he was leaving he turned to the complainant and said, "I am going to kill you. I swear on my mother's grave and she ain't even dead yet, I am going to kill you."

After this last episode, complainant swore out the warrant made the basis of this litigation.

In this posture of the case the constitutionality of Alabama's "peace bond" statute, on its face, and especially its application in this case, is squarely checked to us for resolution. It is a troublesome problem in the light of recent decisions of the Supreme Court of the United States in unrelated cases dealing with proof beyond a reasonable doubt being required to establish guilt of a criminal charge, and in cases of indigency, the Equal Protection Clause of United States Constitution.

The applicable statute (Title 15, Sections 406 and 408, Code of Alabama 1940) provides:

"When the person complained of is brought before the magistrate, he and his witnesses must be heard in his defense; and if, on hearing the witnesses on both sides, it appears that there is no just reason to fear the commission of the offense, the defendant must be discharged. If the hearing is continued, the justice shall require the defendant to give bail for his appearance, and failing to furnish the bail, the defendant must be committed to jail.

\* \* \* \* \* \*

"If, however, there is just reason to fear the commission of such offense, the defendant must be required to give security to keep the peace, in such sum as the magistrate may direct, towards all the people of this state, and particularly towards the person against whom, or whose property, there is reason to fear the offense may be committed, for such time as the magistrate may direct, not more than twelve nor less than six months, but the defendant must not be required to appear at any court unless he has actually committed an offense cognizable in such court."

This Court has held that our statutes, Sections 401–421, Title 15, Code of Alabama 1940, pertaining to peace proceedings "are in restraint of liberty and penal in nature. . . . The bond in such cases, when allowed, is payable to the State, and not to any individual. The State is a party to such proceedings, which are criminal proceedings preventive in nature." Wyatt v. State, 35 Ala.App. 147, 46 So. 2d 837.

In Noles v. State, 24 Ala. 672, the Supreme Court of Alabama in 1864 in dealing with this same subject, citing the Code of 1852, said:

"This statute, being in restraint of liberty and penal, must be strictly constru-

ed; this is, it may not be enlarged, by construction, beyond the plain import of the terms in which it is couched."

In Howard v. State, 121 Ala. 21, 25 So. 1000, the Court held that to threaten an offense on the person or property of another is not an offense against the law for which a person may be punished, but, at most, he may be restrained from so doing by proper proceedings.

Petitioner is an indigent and at the present time is under a bond "to keep the peace with good and sufficient sureties in the amount of $20,000.00 * * * to all the people of the State of Alabama and particularly towards Morris B. Moody, *the person against whom there is reason to fear the threatened offense may be committed, for a period of twelve months* * * *." (Emphasis supplied).

There is an inborn and engrained reluctance on the part of the average American to sign as surety a bond for someone else to keep the peace or to be held responsible for another's good conduct. To "keep the peace" is an overbroad term in itself. A breach of the peace will bring on a forfeiture. On the record before us petitioner has not committed any crime against the laws of this State except assault and battery for which offense he has not been tried. He is serving twelve months in the Bibb County jail simply because no one will become a surety on a $20,000.00 peace bond. Nevertheless, the state was and is a party to these proceedings. That makes it "State action."

Peace bond proceedings had their genesis in Medieval England. 4 Blackstone's Commentaries 251–57. Like many common law doctrines the peace bond has become a non-heroic Don Quixote of the law which now masquerades aimlessly through the reports, still vigorous, still viable, but, as in this case, equally dangerous.

While extended applicability of the Fourteenth Amendment to state proceedings has secured for criminal defendants the right to counsel, to trial by jury, to confrontation and cross-examination, to notice, and to free transcripts of lower court proceedings when required for appeal, the defendant in a peace bond proceeding has remained largely neglected.

As the Supreme Court of the United States said in In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368:

"Civil labels and good intentions do not themselves obviate the need for criminal due process safeguards."

Our peace bond proceedings have been with us for well over a century, but this fact alone should not accord to it a sanctuary where in its application and enforcement it works shameful injustice. Chief Justice Burger said in Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586, "While neither the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack, these factors should be weighed in the balance." With this statement we perforce must agree.

■ Although bonding statutes are not strictly "penal", they have an undeniable punitive effect on indigents who are jailed because they are unable to post bond. If there is to be any force in the requirement that a reading of a statute explicitly inform potential defendants that penal liability attaches to contemplated conduct, antiquity alone should not be a saving factor.

Thirty odd states have enacted peace bond statutes. The accepted criteria in the vast majority of these statutes in order to set in motion the machinery of the law is that the informer complain to the magistrate that the person informed against has made threats on his life. Alabama, along with a few other states, travels on "threatened, or is about to commit an offense on the person or property of another." See Virginia Law Review, 1966, pages 920–921, Note 37.

The peace bond statutes of two of these states, Hawaii and West Virginia, came under constitutional fire in 1971. The statutes

of these two states are markedly similar to the Alabama statute.

The Supreme Court of Hawaii in Santos v. Nahiwa, 53 Haw. 40, 487 P.2d 283, held that state's peace bond statute establishes criminal proceedings and must satisfy the requirements of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. The Supreme Court of Hawaii in reviewing a circuit court's habeas corpus decision said:

"Unable to post bond because of indigency, Santos sought relief by challenging the constitutionality of his conviction and incarceration on a host of grounds which we need not state here. Santos was subsequently discharged from prison when the circuit court set aside and vacated the order requiring him to post bond. The court in so ruling in part found: the conviction violated Santos' constitutional guarantee of substantive due process in that HRS § 709–33 failed to require proof of guilt beyond a reasonable doubt; and the incarceration of Santos was unconstitutional because based on indigency denying him the equal protection of the laws. We affirm the ruling for reasons herein."

█ The Court then left the equal protection clause and affirmed on the due process clause, saying:

"It is also clear that the quantum of evidence establishing probable cause does not justify conviction. State v. Texeira, 50 Haw. 138, 142–143, 433 P.2d 593, 597, (1967). '[E]vidence to prove guilt beyond a reasonable doubt is not required to make an arrest.' State v. Texeira, supra, at 147, 433 P.2d at 600.

"Yet under the application of HRS Sections 709–33, the accused may be adjudged guilty simply on evidence substantiating his arrest. No more is needed than the magistrate's conclusion that the complainant has not mistaken the alleged intention of the accused. This sim-

ply cannot pass constitutional muster '* * * the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime * * * charged.' In Re Winship, supra, 397 U.S. at 364, 90 S.Ct. at 1073.

"HRS Chapter 709, Part 11, 'Bond to Keep the Peace,' is invalid in its entirety.

"Having determined the unconstitutionality of HRS Chapter 709, Part 11, 'Bond to Keep the Peace' on the ground that it violates the due process clause, we find it unnecessary to determine the applicability of the constitutional equal protection requirements."

It is clear that the Supreme Court of Hawaii has declared that state's peace bond proceedings involve the commission of a crime. Alabama expressly holds otherwise. A mere threat is not a crime under the adjudicated cases of this state.

In Roberts v. Janco, 335 F.Supp. 942, a Federal District Court in West Virginia had before it for review a petition by a state prisoner contesting the constitutionality of West Virginia's "peace bond" proceedings. Petitioner asserted six grounds in her attack on such proceedings, viz.:

"(a) Petitioner's confinement is caused solely by her indigency.

"(b) Petitioner was denied her right to appeal the decision of the Justice solely because of her indigency.

"(c) Petitioner has been subject to excessive bail and cruel and unusual punishment.

"(d) Petitioner was denied due process in that she was imprisoned under a procedure where proof of guilt beyond a reasonable doubt was not required.

"(e) Petitioner was denied due process in that Peace Bond proceedings unconstitutionally shift the burden of proof to the accused.

"The sixth ground, denial of right to counsel, was raised during oral argument."

The District Court consolidated these six grounds into four basic constitutional issues: cruel and unusual punishment, denial of procedural due process, denial of substantive due process and denial of equal protection.

The District Court voided *Roberts* conviction because she was not represented by counsel at the "peace bond" hearing. The Court went on to say:

"As a preface to a discussion of the issues raised by the instant petition, the Court is unpersuaded by the contention raised in oral argument that West Virginia's Peace Bond provisions should be struck down as having lost their original aims and purposes. This Court is of the firm opinion that these statutes continue to serve a salutary purpose and are an effective and proper deterrent to violence, either actually perpetrated or immediately threatened. Consequently, if an accused is afforded the necessary constitutional guarantees under existing procedures, then these statutory provisions must stand and any punishment exacted within the prescribed limits thereof must be upheld and given effect.

\* \* \* \* \* \*

"Implicit in the language of § 62–10–1 is the theory that they are intended to deter an individual's future acts. In a realistic sense, however, these provisions also serve to punish. It is evident in this case that as a result of the operation of the involved statutes and/or the practice employed, this Petitioner was assured of punishment exceeding six months imprisonment. Thus, in applying the teachings of Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799] and its progeny to this case, and in accepting the rationale of those cases which hold that individuals facing possible sentences exceeding six months imprisonment and fines exceeding $500 are entitled to legal

representation, this Court holds that the absence of an attorney at Petitioner's hearing, or satisfactory evidence of a valid waiver thereof, voids her conviction.

"In holding that the constitutional right to counsel, either retained or appointed, and the resulting infusion of the principles of advocacy required in a criminal case apply with equal force to West Virginia's Peace Bond proceedings, the Court finds additional support in that portion of Coleman v. Alabama [399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387] pertaining to a criminal defendant's right to counsel at a preliminary hearing.

"In view of the fact that West Virginia's peace warrant proceedings are punitive in nature with confinement of one year assured under the statute and/or the prevailing practice, peace warrant matters in West Virginia are tantamount to a preliminary hearing, a critical stage of criminal proceedings under Coleman. Indeed, the statement in Coleman that 'the guiding hand of counsel . . . is essential to protect the indigent accused against an erroneous or improper prosecution' is applicable to virtually every person, including Petitioner, accused under the so called peace statute.

"Although not necessary to grant the relief sought, it appears that a discussion of Petitioner's remaining allegations is warranted.

"As presently worded West Virginia Code § 62–10–3 permits a justice of the peace to require a recognizance '[i]f he consider there is good cause therefor' but to discharge the accused if he decides 'there is not good cause for the complaint. . . .' (emphasis added).

"Petitioner argues that this statute unconstitutionally shifts the burden of proof to the accused and permits a justice of the peace to require the posting of a peace bond, or be confined to jail, on less than reasonable doubt, the standard re-

quired in a criminal case. In support of these arguments, Petitioner relies on Santos v. Nahiwa, a recent case in which the Supreme Court of Hawaii upheld a lower court's determination that Hawaii's 'Bond to Keep the Peace,' a statute similar to West Virginia's, was unconstitutional in that it failed to require proof of guilt beyond a reasonable doubt.

"The present wording of § 62–10–3 also conditions an appeal of the justice's decision on the giving of the recognizance. The effect, therefore, is to deny the right to appeal to an individual who fails or refuses for any reason, including indigency, to post the bond. In the case of an indigent accused, the denial of equal protection found in Tate v. Short [401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130] is compounded in that the very inability to secure one's freedom also operates to prevent an appeal.

"The Supreme Court's most recent expression on the subject of an indigent's appeal, Mayer v. City of Chicago, [404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372] strongly suggests that an appeal of a justice's decision under West Virginia's Peace Bond statutes may not be conditioned on the giving of the statutory recognizance. In holding that an indigent misdemeanant has a right to a free transcript or 'record of sufficient completeness' for appeal purposes, the Court in Mayer stated:

> The size of the defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case  . . . .
>
> . . . The invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed."

In the instant case petitioner was represented by counsel from start to finish. We are unable to tell from the record before us whether he had retained counsel or not. We will say he had effective, resourceful and aggressive counsel who has favored us with a splendid brief which has been a tremendous aid to us in our determination of the knotty problems presented which so far as we are advised is a case of first impression in this state on constitutional questions in peace bond proceedings. The state was represented at oral argument but we have not received a brief denoting the state's position and contentions. To delay a disposition of this case will only serve to further deny petitioner the relief to which we think he is entitled and which we will now proceed to accord him.

Petitioner was gainfully employed at the time of his arrest but lost his job when he was incarcerated. His wife testified they have two children, ages three and seven months. They lived in a rented home. They did not have a bank account and no stocks or bonds or other assets. According to petitioner's wife when he was working his earnings were sufficient for their needs. They did not seek welfare aid nor food stamps. He has been in jail more than three months. He is without friends or relatives financially able to post bond.

The state has a vested interest in the enforcement of its laws and preventing the commission of criminal offenses. Peace bond proceedings have drawn severe criticism from many legal scholars and writers. In 24 Vand.L.Rev. 410–411, we find the following:

"* * * When payment of the maximum bond is not sufficient to deter a pecunious defendant, the statute does not permit his incarceration. On the other hand, when money is not sufficient to deter an indigent because of his inability to post bond, jail is automatic. Money is no more an effective deterrent for the pecunious defendant who intends to forfeit the bond in order to consummate his threat than it is for the impecunious defendant who is unable to pay bond; nev-

ertheless, the economic classification operates to allow the former to go free and to require the latter to the imprisoned. In effect the state has imposed two different policies: As to pecunious defendants, inadequacy of money to deter the crime does not require incarceration, but as to impecunious defendants, inadequacy of money to deter the crime requires incarceration. The inconsistency may be corrected either by requiring incarceration of the pecunious defendant when non-economic factors suggest that money will not deter him, or by completely removing the possibility of incarceration from the statute. It is submitted that the use of incarceration, if not unconstitutional, (Griswold v. Connecticut, 381 U.S. 479, 499–502 [85 S.Ct. 1678, 14 L.Ed.2d 510]—Harlan, J., concurring) is at least undesirable. Though the state's interest in deterring threatened crimes may be a valid and worthy objective, it should not be elevated above the longstanding requirement in criminal law that intent be accompanied by an *actus reus*. Unless there exists an act sufficient to constitute an attempt, the state's interest should not take priority over so deeply ingrained a notion of fairness that prohibits imprisonment of the criminal defendant in the absence of an overt act. * * *"

Our peace bond statute does not require any quantum of proof, viz., by a preponderance of the evidence, or to reasonably satisfy—much less beyond a reasonable doubt—before one may be required to keep the peace. Our statute merely says, "If, . . there is just reason to fear the commission of such offense, the defendant must be required to give security to keep the peace, in such sum as the magistrate may direct * * *" The quantum of proof is nebulous in the extreme and thus commits the "reason to fear" and the amount of the security to the unbridled discretion of the magistrate. However, we will not approach a disposition of this case under the Due Process Clause of the Fourteenth

Amendment as the Hawaiian Supreme Court did, and invite the Legislature to overhaul the peace bond statute to, in some measure, conform with due process.

We will rest the disposition of this case under the Equal Protection Clause of the Fourteenth Amendment.

■ No system of laws can pass constitutional muster "where the kind of trial a man gets depends on the amount of money he has," and "a law nondiscriminatory on its face may be grossly discriminatory in its operation." Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

■ On the facts in this case, we are confronted with an impermissible discrimination that rests solely on petitioner's inability to post bond due to abject poverty. The $20,000.00 bond to keep the peace is excessive, exorbitant, oppressive, and serves no other purpose than to assure petitioner twelve months servitude for a threatened offense not punishable under our laws. Here the Alabama statute *as applied to appellant* works an invidious discrimination solely because of his financial circumstances and economic status.

The writ is granted and bond is fixed at $500.00 and if it is not approved by the sheriff upon presentation, petitioner shall stand discharged from further incarceration.

Writ granted.

Bond reduced to $500.00.

TYSON and DeCARLO, JJ., concur.

CATES, P. J., concurs specially.

CATES, Presiding Judge (concurring):

I am worried that our peace bond statute is unconstitutional on its face. Since 1970 I believe no one can be legally detained for a crime unless under a judgment requiring

proof beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed.2d 368 and Ivan v. City of New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659. This latter case applied *Winship* retroactively. See Wilbur v. Mullaney, 1 Cir., 473 F.2d 943—a homicide case.

Certainly a proper peace bond law serves a useful societal purpose. Here the appellant exhibits at times an ungovernable temper with attendant physical aggression. Sociopathy is no defense in our jurisprudence. Every citizen is entitled to life, limb and peaceful enjoyment of his rights and privileges. Sic utere tuo ut alienum non laedas conversely restrains the other.

I hope that our Legislature will examine and amend this law.

My concurring opinion nowise is intended to detract from Judge Harris's opinion, which I consider to be the proper pragmatic solution to the situation presented on this record.

## ON REHEARING

### PER CURIAM.

As noted in this opinion the state did not file a brief on original submission of this case. Where there was no brief on the merits filed in opposition to petitioner's brief, an application for rehearing is not a matter of right.

Since we disposed of this case on constitutional grounds, and since this is a case of first impression, we will simply overrule the application and pave the way for review by the Supreme Court if that Court so desires.

Opinion extended and application for rehearing overruled.

TYSON, HARRIS, and DeCARLO, JJ., concur.