# State of Vermont v. Scott Weller

[563 A.2d 1318]

No. 89-234

Present: Allen, C.J., Dooley and Morse, JJ., and Barney, C.J. (Ret.),
Specially Assigned

Opinion Filed June 16, 1989

*Philip R. Danielson*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** This is a bail appeal which was referred by a Justice of this Court to the full Court for decision pursuant to 13 V.S.A. § 7556(b). Our review is limited to whether the order appealed from "is supported by the proceedings below." *Id.* For the reasons detailed below, we conclude that the appearance bond required by the trial court is supported and affirm that order. We conclude, however, that the peace bond required by the trial court is not supported, and reverse and remand for further proceedings on that issue.

On May 4, 1989, defendant was arraigned on charges of reckless endangerment and simple assault, 13 V.S.A. §§ 1025, 1023(a)(1), and the trial court found probable cause. The court found that a risk of flight existed and imposed a cash bail requirement of $2,500 to ensure defendant's appearance at trial. Further, the court imposed a peace bond "to insure that the defendant will keep the peace." The peace bond amount was set at $5,000, "cash or solvent sureties." These orders were issued based on the papers on file in the criminal cases and the arguments of counsel; no evidence was taken. It is these orders that defendant has appealed.

The factual basis for the orders is generally undisputed. The State's allegation is that defendant has engaged in domestic violence on his wife. This violence led to a criminal conviction for which defendant was placed on probation. At some point, defendant was convicted of violating conditions of probation for the third time and was ordered to serve time as sentenced on the underlying charges. The conviction was appealed and

the sentence was stayed. Because of the stay, defendant remained on probation under the preexisting conditions. He again violated those conditions, but again the underlying sentence was not imposed because of the stay. The State alleges that following the hearing on the second violation, defendant went directly to the victim's house and committed the underlying offenses for which he was arraigned on May 4, 1989.

The defendant first challenges the appearance bond requirement arguing it is unsupported by the record because he has always appeared at court proceedings in this and all former cases (with one exception) and he is a life-long resident of Vermont. The trial court accepted these factors as true but concluded that defendant's history of failing to report to his probation officer, one of the causes of many of the probation violation findings, meant that "there is no condition or combination of conditions that will reasonably assure the defendant's presence in court short of imposing cash bail."

As we recently discussed in *State v. Duff*, 151 Vt. 433, 435, 563 A.2d 258, 260 (1989), our bail statutes require the trial courts to use the least restrictive release conditions that will "reasonably assure the appearance of the person as required." 13 V.S.A. § 7554(a)(1). The statute sets forth a list of increasingly restrictive conditions with the requirement that the court go only so far down the list as necessary to ensure appearance. See *Duff*, 151 Vt. at 435, 563 A.2d at 260. Included on the list are surety bonds or cash in lieu of surety.

■ In this case, while the trial court found "no evidence that the defendant ever failed to appear in court when required," it also found that defendant's failure to report to his probation officer created a clear risk of flight. The court's conclusion clearly shows that it considered the less restrictive conditions itemized in 13 V.S.A. § 7554(a)(1) and rejected them. It was reasonable for the court to conclude that defendant's failure to report to his probation officer increased the risk that he would not appear in court despite his past record. In addition, the mounting multiplicity of charges increases the risk. See *State v. Brown*, 136 Vt. 561, 567, 396 A.2d 134, 137 (1978). We find that the court's conclusion is supported by the record. Since defendant does not argue that

the amount of bail is excessive, we affirm the cash bail requirement.

We now turn to defendant's challenge to the peace bond requirement and to Vermont's peace bond statute. Here, defendant argues: (1) the authorization for the peace bond contained in 13 V.S.A. § 7573 was impliedly repealed by the enactment of 13 V.S.A. § 7554 as the "sole source" of the court's power to impose pretrial release conditions; (2) the peace bond statute is unconstitutional in that it violates Chapter I, Articles 1 and 10 of the Vermont Constitution; and (3) the amount of the peace bond is excessive in this case. While we agree that a peace bond was improperly required in this case, we reach this conclusion on different grounds than those argued by defendant. Because of our disposition, we do not reach the constitutional questions raised by defendant.

The peace bond statute, 13 V.S.A. § 7573, states:

> A district court may order a person who is arrested for a criminal offense, to find sureties that he will keep the peace, when it is necessary, and may commit him to jail until he complies.

This statute is nearly as old as the state,[1] and its roots run as deep as any concept in Anglo-American common law. By statute of 1360 it became the law in England:

> That in every county ... shall be assigned for the keeping of the peace, one lord, and with him three or four of the most worthy in the county, with some learned in the law, [with the power] to take and arrest all those that they may find by indictment, or by suspicion, and to put them in prison; ... and to take of all them that be not of good fame, where they shall be found, sufficient surety and mainprise of their good behaviour towards the King and his people, and the other duly to punish, to the intent that the people be not by such rioters or rebels troubled nor endamaged, nor the peace blemished, nor merchants nor other passing

---

[1] The earliest versions of the statute show that it has been changed only to conform to changes in the court system in Vermont. See, e.g., R.S. ch. 26, § 6 (1839) ("A justice may order any person, arrested for a criminal offence, to find sureties of the peace, when, in the opinion of such justice, it shall be necessary, and may commit such person to jail, until he finds such sureties.").

by the highways of the realm disturbed, nor put in the peril which may happen of such offenders.

34 Edw. III, c.1. Blackstone commented on the use of a so-called "statutory peace bond":

This security consists in being bound with one or more sureties, in a recognizance or obligation to the king, entered on record, and taken in some court, or by some judicial officer; whereby the parties acknowledged themselves to be indebted to the crown in the sum required; (for instance 100 *l.*) with condition to be void, and of none effect, if the party shall appear in court on such a day, and in the mean time shall keep the peace: either generally, towards the king, and all his liege people; or particularly also, with regard to the person who craves the security. Or, if it be for the good behaviour, then on condition that he shall demean and behave himself well, (or be of good behavior) either generally or specially, for the time therein limited, as for one or more years, or for life.

4 W. Blackstone, Commentaries 249–50 (Dublin 1771). See generally Note, *Peace and Behavior Bonds—Summary Punishment for Uncommitted Offenses*, 52 Va. L. Rev. 914, 914–15 (1966); Note, *"Preventive Justice"—Bonds to Keep the Peace and for Good Behavior*, 88 U. Pa. L. Rev. 331, 332 (1940). Virtually every state adopted some variation on the English peace bond statute. See Note, *Peace Bond—A Questionable Procedure for a Legitimate State Interest*, 74 W. Va. L. Rev. 326, 326 n.4 (1972) (compendium of state statutes). Many of the state peace bond statutes are quite elaborate and detailed. See, e.g., Mass. Gen. Laws Ann. ch. 275, §§ 1–17. Our statute is probably the sparest implementation of the concept.

Peace bond statutes are measures intended to prevent future acts of violence rather than to punish past acts. Despite this preventive, rather than punitive, orientation, the statutes have been criticized by commentators because the preventive theory results in the punitive sanction of imprisonment when the defendant cannot raise the bail amount. See, e.g., Casenote, 76 Dick. L. Rev. 204 (1971); Casenote, 24 Vand. L. Rev. 405 (1971). The Alabama Court of Criminal Appeals described the peace bond as follows:

> Like many common law doctrines the peace bond has become a nonheroic Don Quixote of the law which now masquerades aimlessly through the reports, still vigorous, still viable, but, as in this case, equally dangerous.

*Ex parte James*, 53 Ala. App. 632, 640, 303 So. 2d 133, 140 (1974). Based on this sentiment, a number of courts have found constitutional violations in the use of peace bonds. See *id.* at 644, 303 So. 2d at 144 (impermissible discrimination based on wealth, violation of equal protection of laws); *Kolvek v. Napple*, 158 W. Va. 568, 575, 212 S.E.2d 614, 619 (1975) (same; unconstitutional as applied to indigent defendants); *Santos v. Nahiwa*, 53 Haw. 40, 44, 487 P.2d 283, 285 (1971) (denial of due process of law unless bond imposition is based on proof beyond a reasonable doubt). But see *Commonwealth v. Miller*, 452 Pa. 35, 38–41, 305 A.2d 346, 348–49 (1973) (over two strong dissents, held that neither a jury trial nor proof beyond a reasonable doubt is constitutionally required). Apparently because of this criticism and the holdings from courts that have analyzed peace bond statutes, it has fallen into disuse virtually everywhere. There have been almost no cases dealing with peace bonds in the last fifteen years.

Although the use of the peace bond in Vermont goes back to at least the early nineteenth century, we have never had occasion to interpret our statute. Indeed, peace bonds were dormant in this state until recently, when trial courts began to use peace bonds as additional or alternative conditions of release in criminal cases. Cf. *State v. Webb*, 132 Vt. 418, 421, 320 A.2d 626, 628 (1974) ("A defendant may also be required to post a peace bond to assure that he will keep the peace.") (citing 13 V.S.A. § 7573).

■■ In construing our peace bond statute, we must rely on familiar canons of construction. We must construe statutes to implement the legislative intent, presuming that the legislature intended the plain meaning of the language. See, e.g., *Vermont State Employees' Association v. State*, 151 Vt. 492, 494, 562 A.2d 1054, 1055–56 (1989). Where there are similar statutes in other states, we look for guidance in the interpretations of those statutes. See, e.g., *Mercier v. Partlow*, 149 Vt. 523, 526, 546 A.2d 787, 789 (1988). This is particularly true where the statutes have a common origin in the English

statutes. See Sands, 2A Sutherland Statutory Construction § 52.01, at 522 (4th ed. 1984).

 Based particularly on the review of statutes from other states, we conclude that the peace bond statute is not, as the trial court necessarily construed it, a pretrial bail statute, but is instead an independent proceeding.[2] After one is "arrested for a criminal offense," 13 V.S.A. § 7573, an action may be brought against the defendant seeking a peace bond. This action can be initiated by the court, sua sponte, by the State, or by a third party with cause.[3] It is administered in that fashion in virtually all states although it is usually related to criminal proceedings. See generally Note, *"Preventive Justice"—Bonds to Keep the Peace and for Good Behavior, supra,* at 334–36.

In this state, it is triggered by the fact that the person from whom the bond is sought is "arrested for a criminal offense." 13 V.S.A. § 7573. Other states have more typically triggered the authorization to require a peace bond by the complaint of the victim of a threatened crime, see Mass. Gen. Laws Ann. ch. 275, § 2, or the conviction of a crime, see 15 Me. Rev. Stat. Ann. tit. 15, § 1706. In analyzing the statute, it is helpful to separate out this "trigger" from the operation of the proceeding.

This separate proceeding demands an independent burden of proof. Some courts have held that the burden of proof is the normal civil burden of preponderance of the evidence. See, e.g., *State ex rel. Shockley v. Chambers,* 278 S.W. 817, 817–18 (Mo. App. 1926). Others have held that the burden is to prove the operative facts beyond a reasonable doubt. See *Santos v. Nahiwa,* 53 Haw. at 42–44, 487 P.2d at 284–85. In any event,

---

[2] The peace bond statute, 13 V.S.A. § 7573, follows a series of bail statutes in chapter 229 of Title 13 under the heading "Bail and Recognizances." In earlier codifications, many of these statutes, including the peace bond statute, were collected together to describe actions a justice of the peace could take with respect to persons charged with a crime that exceeded the jurisdiction of the justice's court. See P.S. §§ 2300–2305 (1906). Thus, the common denominator for the statutes is that they describe actions taken by a justice of the peace rather than describing pretrial and release procedure.

[3] We refuse to classify this action as "civil," "criminal," or "quasi-criminal," as our sister states have done. See *Fedele v. Commonwealth,* 205 Va. 551, 555, 138 S.E.2d 256, 259–60 (1964); *Ex parte Way,* 56 Cal. App. 2d 814, 816–17, 133 P.2d 637, 639 (1943).

it must be satisfied by evidence and specific findings based on the evidence. See *Ex parte Montez*, 134 Tex. Crim. 315, 316–17, 115 S.W.2d 912, 912 (1938). The defendant must have an opportunity to oppose the bond in a "full hearing and investigation of the facts." *Commonwealth v. Miller*, 452 Pa. at 40, 305 A.2d at 349.

■ The purpose of the peace bond proceeding is to determine whether a bond is necessary to prevent specific acts in the future. It is important that defendant have notice of the specific facts in issue and that any conduct to be covered by a peace bond obligation be described specifically. See *Commonwealth v. Franklin*, 172 Pa. Super. 152, 92 A.2d 272 (1952) (peace bond statute too discretionary to enforce).

■ We note that the peace bond statute does not authorize a requirement that the defendant post cash, nor does it specify what type of surety is acceptable. The trial courts should use the surety requirement liberally to ensure a peace bond requirement is used for prevention rather than for detention. See *Kolvek v. Napple*, 158 W. Va. at 575, 212 S.E.2d at 619.

■ Finally, we note that the statute is silent on the duration of any order to post a peace bond or of any incarceration for failure to post a peace bond. The peace bond is unrelated to the triggering criminal case and, in the absence of a time limit, will go on indefinitely. The better practice is to impose a time limit on the bond requirement or to provide for automatic review after a specified period of time.

The peace bond was imposed in this case with little of the protective process discussed above. Apparently, no notice was given that a peace bond requirement was under consideration, nor was there any specification of the factual issues involved. No evidence was taken and no findings were made. The conduct to be covered by the peace bond is not specifically described. Although the defendant is apparently indigent, there is no indication that the court considered alternative sureties. There is no indication of any limit on the duration of the peace bond.

■ The peace bond requirement in the case at bar appears to be set as a form of bail for preventive incarceration, which our statutes do not authorize. See 13 V.S.A. § 7554(a)(2).

Accordingly, the peace bond requirement is not supported by the proceedings below and we reverse and remand for further proceedings consistent with this opinion.

Because of our disposition, we do not reach the constitutional issues raised by the defendant. Nor have we attempted to address other constitutional issues raised by a peace bond requirement, preferring to leave those to another day. Since we have construed the peace bond proceeding separate and apart from the pretrial release decision under 13 V.S.A. § 7554(a), we necessarily find that the enactment of the pretrial release statute did not impliedly repeal the peace bond statute.

*Affirmed as to appearance bond; reversed and remanded for additional proceedings not inconsistent with this opinion as to the peace bond.*